[No. 31611. Department Two. January 17, 1952.]

CORBIN PETERS et al., Respondents, v. DULIEN STEEL PRODUCTS, INC., Appellant.[1]

[1]Reported in 239 P. (2d) 1055.

*Robbins & Robbins* and *Imus & Marsh*, for appellant.

*John F. McCarthy* and ·*McCoy, Purcell & Elliott*, for respondents.

OLSON, J.—This is an appeal from a judgment entered upon the verdict of a jury.

Appellant owned three steel vessels which it had acquired from the maritime commission. On November 27, 1946, appellant sold the hulls of the three vessels, then partially dismantled, to respondents for the sum of seven thousand five hundred dollars. Respondents agreed to pay the Port of Kalama the monthly rental of seven hundred fifty dollars for dock facilities while the hulls were being scrapped, and all expenses of the dismantling. Appellant agreed to buy all of the steel resulting from the dismantling of the ships for nine dollars per gross ton. This price was subject to adjustment.

The preceding portions of the agreement were in writing. Respondents claim that the parties also orally agreed that the nonferrous materials obtained from the vessels were to be sold to the appellant at market price, and that appellant was to account for and pay to respondents the proceeds of those sales, less costs, in addition to the agreed payments for the steel. Appellant denies this claim.

Respondents commenced to cut up one of the hulls about December 1, 1946. On February 3, 1947, appellant agreed to· raise the rate for steel from nine dollars to ten dollars a ton. On March 28, 1947, appellant took over the work, claiming that the moneys it had then advanced to respond-

ents were so far in excess of the value of shipments of scrap that it would make no further advances. Respondents contend they were prevented from doing anything under the contract after that date.

Respondents claim damages for breach of contract upon three causes of action: (1) that they had removed and placed in a warehouse on the dock, when appellant took over the operation, certain nonferrous material of the value of $10,595, for which they were not paid; (2) that they were not paid for the nonferrous material shipped to appellant prior to March 28, 1947, of the value of $15,000; and (3) that they had sustained a loss of profits because they were not permitted to complete the work.

We will first consider appellant's claim that the trial court erred in not granting appellant's motion to strike respondents' demand for a jury trial.

It is appellant's contention that, from the pleadings, the case is one of equitable cognizance because an accounting is involved, and that it was error to deny its motion to strike respondents' demand for a jury. The respondents' allegation that appellant was to render them an accounting of all materials, showing the amount and value thereof, was denied in the answer. Other provisions of the contract were also in issue. Judge Howard J. Atwell, one of the judges of Cowlitz county, ruled on this question. We agree with his ruling that these causes of action are legal in their nature. In essence, they are actions at law for the recovery of the purchase price of certain material under a contract, the terms of which are disputed, and for damages for breach of contract. A trial by jury cannot be denied merely because the questions of fact are complicated or involve figures which are difficult to carry in mind. If the action is one purely legal in its essence and nature, the parties have a right to a trial by jury. *Gatudy v. Acme Constr. Co.*, 196 Wash. 562, 83 P. (2d) 889 (1938).

On the merits, appellant contends that the evidence is insufficient to support the verdict, and that the trial court

erred in not granting its motion for judgment for appellant notwithstanding the verdict or for a new trial.

■ ■ The law of the case was settled by the instructions, to which no exception was taken. Our examination of the facts, as they appear from the eight-hundred-page statement of facts, brings us to the conclusion that there was sufficient evidence to justify submission of the case to the jury on all issues, but that there was not sufficient evidence to support the amount of the verdict. As is sometimes the case, we have a better opportunity than does the trial judge to review a question of this nature, particularly in a case like this one, involving a large number of disputed claims. Having the record before us, we can list the items and verify them in a manner which is difficult before the record is completed.

To set forth all of the various details of the account between these parties would unduly lengthen this opinion. It is sufficient for our purpose to refer to the principal items in controversy. From these, it can be shown that the amount of the verdict is excessive.

Upon the first cause of action, we will assume for this purpose that respondents should recover the full amount claimed, $10,595. This is assumed without making valid deductions for payments on a tonnage basis for some of the articles made of steel. The law of the case is that all such items were to be valued, by weight, as steel, regardless of their sale value.

Upon the second cause of action for the nonferrous material shipped to appellant before March 28, 1947, we will consider that respondents could recover the following principal items:

68½ tons cast iron @ $31 per ton ............... $2,123.50
10 tons copper and brass @ $420 per ton ......... 4,200.00
1¾ tons Babbitt @ $0.30 per lb ................. 1,050.00
3 tons bronze propeller @ $250 per ton .......... 750.00
6,190 lbs. degauzing cable, 3,095 lbs. copper, 3,095
    lbs. lead ................................. 994.75
15-ton condenser, estimated as ⅓ brass @ $420 per
    ton for 5 tons ............................ 2,100.00    $11,218.25

Upon the third cause of action for respondents' claimed loss of profits, we will assume recovery could be had for these principal items, which they might have salvaged had they completed their contract:

| | |
|---|---:|
| 120 tons cast iron @ $31 per ton.............. | $3,720.00 |
| 3,800 tons steel @ $10 per ton................. | 38,000.00 |
| 20 tons brass and copper @ $420 per ton........ | 8,400.00 |
| 3 tons lead @ $300 per ton.................... | 900.00 |
| 900 lbs. Babbitt @ $0.30 per lb. ............... | 270.00 |
| | $51,290.00 |

*Cost of Salvage*
3,943 tons @ $12 per ton (the respondents' testimony of cost) ..........................$47,316.00

Largest possible profit............................... $3,974.00

■ The total upon all three causes of action is $25,787.25, considering the evidence most favorably to respondents. This is the largest amount for which, under any possible contention, it can be said there is substantial evidence to support a recovery by them, without offsets and except for minor items which we do not detail.

Including the rental of $2,250 which the appellant paid for respondents, it advanced to them the approximate sum of $8,667 in excess of the amount due, on a tonnage basis, for the material shipped. The respondents did not pay the purchase price of the hulls in the sum of $7,500. These two items total $16,167, which must be offset against any recovery by respondents, leaving the balance in respondents' favor $9,620.25. The verdict is for $20,000 and cannot be permitted to stand.

■ All of the items being in dispute, we cannot assess the amount of respondents' recovery. To do so, we would have to invade the province of the jury. Nor should the computation we have made be so considered. We only have demonstrated that, in any event, considering the evidence most favorably to the respondents, there is not substantial

evidence to support a verdict in the amount returned by the jury in this case.

The judgment is reversed, and the cause remanded to the superior court, with instructions to grant a new trial.

HILL, HAMLEY, FINLEY, and WEAVER, JJ., concur.

February 27, 1952. Petition for rehearing denied.