103 N.J. Super. 163 (1968)
246 A.2d 750
ROGERS CARL CORP., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LAWRENCE D. MORAN AND JENNIE MORAN, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 25, 1968.
Decided October 14, 1968.
*164 Before Judges CONFORD, KILKENNY and LEONARD.
Mr. Francis C. Foley argued the cause for appellants (Messrs. Foley and Gazi, attorneys).
Mr. George W. Morton, Jr. argued the cause for respondent.
*165 The opinion of the court was delivered by LEONARD, J.A.D.
Defendants appeal from an adverse judgment entered against them in plaintiff's action for slander of title and upon defendants' counterclaim for specific performance.
The trial court, at the conclusion of all of the testimony, denied defendants' motion for a dismissal of plaintiff's action but granted plaintiff's motion for a direction of verdict in its favor on the liability phase of the case. The Court thereupon, submitted to the jury solely the issue of damages and the jury returned a verdict in favor of plaintiff and against defendants for $665.33 compensatory damages and $5 punitive damages.
This action springs from a contract executed between the parties on January 7, 1966, wherein plaintiff agreed to sell and defendants agreed to buy certain vacant land and a house to be constructed thereon by plaintiff. The total contract price was $23,500, to be paid as follows: $100 down; $400 cash and a $1,500 promissory note, when defendants obtained a $16,000 mortgage commitment; and the balance of $5,500 in cash and the mortgage money at the closing.
By an addendum to the contract the parties agreed that the mortgage loan "shall be obtained from City Federal Savings and Loan Association only" (City Federal), the company from which plaintiff had obtained a construction mortgage.
By letter dated January 27, 1966 City Federal advised defendants that their application for a mortgage loan had been approved and that attorneys Adams and Rockoff would "prepare our required documents and furnish us with title insurance." Defendant Lawrence Moran remonstrated with Englemann, president of plaintiff, over the mortgagee's designation of its closing attorney, taking the position that Foley, defendants' attorney in the transaction, who was also on a list of approved closing attorneys of City Federal, should so act. Englemann said the designation could not be changed and, according to Moran, said there was "no deal." Englemann *166 testified he had his discussions on this subject with Foley and that the latter was adamant about being the closing attorney for the mortgagee, even after Englemann inquired of City Federal whether that arrangement satisfied it and received and transmitted a negative response. The Morans also refused to make the cash payment or deliver the $1,500 note.
On February 16, 1966 Adams and Rockoff, attorneys for the mortgagee, wrote to defendants that in view of their failure to make payment of the cash deposit and execute the promissory note, the agreement was rescinded by the seller. Coincidentally, the Morans recorded their contract with plaintiff in the county clerk's office on the very same date  February 16, 1966. Defendant Lawrence Moran on February 22, 1966 wrote to City Federal that defendants accepted the commitment "except that the attorney who is to prepare the necessary documents and title insurance is your approved attorney, Francis C. Foley," purportedly in accord with an original understanding between defendants and Englemann to that effect. This controversy as to the attorney was never resolved, both parties holding steadfast to their respective positions.
On February 22 plaintiff wrote to defendants, returning their $100 deposit check and stating that "[W]e regret that you were unable to complete the purchase of the property * * *." On March 4 defendants' attorney, Foley, by letter sent defendants' deposit check to Adams and Rockoff, advising them that defendants had no intention of cancelling their contract and that he was holding the balance of the deposit for the seller and "will deliver the same when the controversy with respect to your representation of Mr. Moran is disposed of." In the same letter Foley stated that the contract between plaintiff and defendants was recorded on February 16.
Thereupon, plaintiff instituted the present action for slander of title, seeking compensatory and punitive damages and the removal of the contract from record. The basis of plaintiff's claim, as disclosed by the pretrial order, was *167 that defendants "willfully, wantonly, maliciously and with the intention to damage plaintiff, recorded the contract" and in so doing acted "in bad faith."
Nevertheless, at the commencement of the trial and before the jury was drawn, the judge, albeit without objection by counsel, stated that the question involved was whether plaintiff or defendants "breached the contract." From then on the record discloses that the only issue considered and resolved by the court was "breach of contract."
However, defendants in arguing their motions for dismissal made at the end of plaintiff's case and at the conclusion of all the testimony, argued that plaintiff did not carry its burden of proving that defendants acted "maliciously" and that the evidence disclosed that defendants acted in "good faith" upon "probable cause" prompted by "a reasonable belief." The court, in denying these motions and in granting plaintiff's motion for a directed verdict, did not determine the issue of malice or good faith but merely concluded that there was "no factual question with respect to the breach of contract by the defendants and that they therefore had no right to record the contract."
Upon the record, we agree with the court's conclusion that defendants breached their contract and that therefore they were not entitled to specific performance thereof, and that plaintiff was entitled to have the contract removed from record. Defendants had no legal right to name the mortgagee's closing attorney. The fact that the mortgage commitment designated closing attorneys other than Foley did not constitute a failure to provide defendants with a suitable mortgage commitment consistent with the contract. Consequently, upon defendants remaining adamant in naming the mortgagee's closing attorney and refusing to pay the cash and deliver the note called for by the contract, plaintiff had the right to rescind. Nevertheless, the foregoing conclusions do not support the trial court's entry of a directed verdict in favor of plaintiff on its action for slander of title.
*168 Malice, express or implied, is an essential element of the cause of action for slander of title. Andrew v Deshler, 45 N.J.L. 167, 169 (E. & A. 1883); Frega v. Northern New Jersey Mtg. Ass'n, 51 N.J. Super. 331, 340 (App. Div. 1958). Plaintiffs do not deny that proof of malice or bad faith in the recording of the contract by defendants was a requisite for their establishment of a cause of action for slander of title, but contend that factor is conclusively shown by the proofs.
A rival claimant is privileged to disparage another's property in land by an honest assertion of an inconsistent legally protected interest in himself. Restatement of Torts, § 647, pp. 364-365 (1938).
As the court said in Andrew v. Deshler, supra:
"* * * If the words are spoken by a stranger, the law presumes malice. But if the party is himself interested in the matter and announces the defect of title, bona fide, either for the purpose of protecting his own interest or preventing the commission of a fraud, the legal presumption of malice is rebutted. Malice is of the gist of the action, and the real point on the question of malice is whether the defendant made the statement bona fide and under an honest impression of its truth, or whether he made it maliciously, for the purpose of slandering the plaintiff's title." (45 N.J.L., at pp. 169-170)
Where a defendant acts in pursuance of a bona fide claim which he is asserting honestly, although without right, as eventually appears from an adjudication by a court of competent jurisdiction, such defendant will not be penalized in damages for asserting such a bona fide claim in good faith. Keiser v. Kile, 166 Okla. 41, 26 P.2d 194, 195 (Okla. Sup. Ct. 1933). See also Bogosian v. First National Bank of Millburn, 133 N.J. Eq. 404, 406 (Ch. 1943).
As previously noted, the contract here involved made no provision as to whose attorney was to prepare the closing documents and the title search. Moreover, defendants attempted to establish that City Federal had a "policy" or custom whereby it allowed a purchaser-mortgagor to use his own attorney to handle the closing for the mortgagee, *169 particularly when that attorney was on City Federal's "approved" list. The court sustained plaintiff's objection to this evidence on the ground that the contract could not be altered by oral evidence. This ruling was erroneous insofar as it affected plaintiff's claim for slander of title. Since the contract was silent as to the closing attorney, custom and usage of the trade would be admissible on the issue of defendants' good or bad faith. The jury could well have considered that such proof indicated that defendants acted in good faith in insisting that Foley act as the closing attorney.
Under all the circumstances, we are of the opinion that the issue of whether defendants exceeded the just bounds of their privilege, i.e., whether they were actuated by an honest, bona fide purpose to protect their own interest or by a malicious design to defame plaintiff, was one for the jury resolution. Andrew v. Deshler, supra, 45 N.J.L., at pp. 170-171.
The fact that defendants breached their contract with plaintiff is not per se proof of malice. It is merely one fact that the jury should consider together with all the other circumstances, in evaluating defendants' conduct.
The portion of the judgment which awarded plaintiff compensatory and punitive damages on its claim for slander of title is reversed and remanded for a new trial. The remaining portions of the judgment are affirmed.