[No. 46897.    En Banc.    September 25, 1980.]

BERNARD BROWN, ET AL, *Appellants,* v. SAFEWAY STORES, INC., *Respondent.*

*Diamond & Sylvester,* by *Robert E. Ratcliffe, James M. Thomas,* and *Josef Diamond,* for appellants.

*Bogle & Gates, Delbert D. Miller,* and *Dean A. Messmer,* for respondent.

*Slade Gorton, Attorney General, Thomas L. Boeder, Senior Assistant,* and *Jon P. Ferguson, Assistant,* amici curiae.

STAFFORD, J.—Appellant, Isador Schreiber and Associates, appeals from the trial court's grant of a motion to strike its jury demand and from the dismissal of its amended complaint. Respondent, Safeway Stores, Inc. (Safeway), cross–appeals from the dismissal of its counterclaim. For the reasons set forth below, we affirm the trial court.

This case involves the alleged breach of a commercial shopping center lease by Safeway. Prior to August 1965, Safeway acquired a parcel of land in Bellevue for the development of a shopping center. Safeway subsequently entered into negotiations for the sale of the property to Nickum Properties, Inc. (Nickum), a local shopping center developer. By June 1967, they had reached an agreement whereby Nickum would purchase the land, construct a shopping center thereon and lease back a commercial space to Safeway to be used as a supermarket. The agreement was subsequently embodied in a written shopping center lease.

Nickum encountered difficulties in financing the project. At that juncture, appellant entered into discussions with Safeway and Nickum, eventually purchasing the property with the understanding that a commercial space would be leased to Safeway for a supermarket. Nickum's interest in the development was wholly assigned to appellant.

The terms of the Safeway/Schreiber Shopping Center lease (Lease), executed on May 23, 1968, were identical to those of the original Safeway/Nickum lease except the dates and the names of the contracting parties. The Lease required Safeway to pay rental of $4,278 per month or 1 1/2 percent of its monthly gross sales, whichever was greater. The lease also contained an assignment/subletting provision which provided:

> Lessee may assign this lease or sublet the whole or any part of the leased premises. If lessee assigns this lease, lessee shall remain liable as a surety to lessor for full performance of lessee's obligations.

Appellant constructed the shopping center (Center) and Safeway commenced operations in mid–1969. Percentage rents became payable beginning in 1973 and continued through 1976. In 1976, Safeway learned that a substantially larger commercial space would be available in a new shopping center to be constructed approximately one–half mile from the Center. Approximately six months before moving, Safeway notified appellant it would be closing the Center

store, relocating nearby, and that it intended to sublet the vacated commercial space. Both appellant and Safeway subsequently engaged in efforts to obtain a new tenant for the Center space.

On July 16, 1977, Safeway closed its Center store, and the following day opened its new supermarket at the nearby location. In August 1977, Safeway began sublease negotiations with Uwajimaya, Inc., an Asian grocery and import business. Before the Uwajimaya sublease could be executed, however, appellant filed the present action.

The Uwajimaya sublease was executed on October 1, 1977. It contemplated a new opening date of February 1, 1978. Due to the pendency of the present litigation, however, Uwajimaya did not begin the necessary remodeling to permit the store to be opened on the planned date. The trial court's uncontested finding of fact indicates that in order to induce Uwajimaya to begin preparations for opening its store, it was necessary for Safeway to grant Uwajimaya a rent reduction. Uwajimaya opened for business in June 1978, and at all time relevant to this action, Safeway continued to pay appellant the fixed minimum rent required by the Lease.

Appellant's amended complaint alleged Safeway breached the shopping center lease, acted in bad faith, engaged in unfair competition and interfered with contractual rights. Appellant also demanded a jury trial on all issues. Safeway counterclaimed for damages on the theory of slander of title and tortious interference with contractual relations and business expectancies. The trial court granted Safeway's motion to strike the jury demand and subsequently dismissed the amended complaint and counterclaim. Both parties appealed and the Court of Appeals certified the cause to this court.

Appellant challenges the trial court's denial of its motion for a jury trial and the dismissal of its amended complaint. In its cross appeal, Safeway challenges the dismissal of its counterclaim. Each issue is discussed separately below.

## I
### RIGHT TO A JURY TRIAL

The trial court ruled appellant was not entitled to a jury trial, reasoning the issues presented were primarily equitable rather than legal in nature, that the legal issues were only incidental to the equitable issues and that they were not easily separable for submission to a jury. Appellant contends the trial court erred in so ruling for three reasons: first, respondent's motion to strike violated the time requirements of CR 6(a) and (d); second, the relief sought was primarily legal not equitable in nature; and third, a jury trial should have been granted on the legal issues, despite the presence of the equitable issues. We reject appellant's contentions.

### A
### TIMELINESS OF RESPONDENT'S MOTION TO STRIKE THE JURY

■ Appellant asserts Safeway's motion to strike the jury violated the time requirements of CR 6(d) which requires notice of written motions to be made at least 5 days in advance of the hearing thereon. It is clear the rule has been violated since Safeway filed the motion on the day of trial. We have previously held, however, that CR 6(d) is not jurisdictional, and that reversal for failure to comply requires a showing of prejudice. *Loveless v. Yantis,* 82 Wn.2d 754, 759–60, 513 P.2d 1023 (1973); *Hockley v. Hargitt,* 82 Wn.2d 337, 347, 510 P.2d 1123 (1973); *Rivard v. Rivard,* 75 Wn.2d 415, 420, 451 P.2d 677 (1969). In the instant case, although appellant objected to the lack of sufficient notice, it presented countervailing oral argument and submitted case authority in support of its position. No request for a continuance was made and the trial court granted a rehearing on the motion late the same afternoon. There was no adequate showing of prejudice. We therefore reject appellant's contention.

## B
### PROPRIETY OF GRANTING THE MOTION TO STRIKE
### THE JURY

Appellant contends the trial court erred in striking its motion for a jury trial because the issues presented are primarily legal not equitable in nature, and, alternatively, that a jury trial should have been granted as to the legal issues despite the presence of equitable issues. We do not agree.

■ The Washington State Constitution, article 1, section 21 provides that the right to a jury trial shall remain inviolate. We have consistently interpreted this constitutional provision as guaranteeing those rights to trial by jury which existed at the time of the adoption of the constitution. *In re Marriage of Firchau,* 88 Wn.2d 109, 114, 558 P.2d 194 (1977); *Watkins v. Siler Logging Co.,* 9 Wn.2d 703, 116 P.2d 315 (1941). Accordingly, there is a right to a jury trial where the civil action is purely legal in nature. Conversely, where the action is purely equitable in nature, there is no right to a trial by jury. *Peters v. Dulien Steel Prods., Inc.,* 39 Wn.2d 889, 239 P.2d 1055 (1952); *Dexter Horton Bldg. Co. v. King County,* 10 Wn.2d 186, 116 P.2d 507 (1941); *Knudsen v. Patton,* 26 Wn. App. 134, 137, 611 P.2d 1354 (1980). The overall nature of the action is determined by considering all the issues raised by all of the pleadings. *Seattle v. Pacific States Lumber Co.,* 166 Wash. 517, 530, 7 P.2d 967 (1932); *Santmeyer v. Clemmancs,* 147 Wash. 354, 266 P. 148 (1928).

A review of the instant pleadings indicates the action is neither purely legal nor equitable in nature. They present a mixture of legal and equitable issues. In their amended complaint, appellant alleged Safeway breached the Lease, engaged in unfair competition and interfered with contractual relations. As a result thereof, appellant contends it suffered monetary damages and sought by way of relief: (1) a declaration that Safeway had abandoned the Lease by closing the store and removing the fixtures; (2) surrender of the premises to appellant; (3) restoration of the premises to their original condition at Safeway's expense; (4) an

accounting by Safeway of its gross sales in 1977 prior to closing its store and payment of the proper percentage rental to appellant; and (5) recovery for any other damage sustained by appellant, including loss of business and percentage rentals during the period Safeway's store was closed.

It is well settled that the construction of a lease is a legal question. As we noted in *Durand v. Heney,* 33 Wash. 38, 41, 73 P. 775 (1903):

> Where [the document] is an enforcible contract, and the ambiguity arises as to the relative responsibilities and duties of the respective parties under the contract, which responsibilities and duties can be determined either by proof of the meaning of the terms used in the contract or by a showing of the circumstances surrounding the parties with reference to the subject–matter of the contract at the time it was entered into, and there is any controversy over such facts, undoubtedly such contract should be submitted to the jury, and its meaning determined by that tribunal by aid of such explanatory testimony.

*See Carstens v. Earles,* 26 Wash. 676, 67 P. 404 (1901). It is equally clear that the actions sound in tort, and requests for monetary damages based thereon are legal in nature. *Watkins v. Siler Logging Co., supra.*

The primary relief sought by appellant, however, is almost exclusively equitable in nature. The prayer for the cancellation of the Lease and declaration of abandonment are requests for equitable relief. *Ranta v. German,* 1 Wn. App. 104, 107, 459 P.2d 961 (1969). Moreover, appellant's request for restoration and an accounting are also equitable in nature. *Brady v. Ford,* 184 Wash. 467, 52 P.2d 319 (1935); *Pollock v. Ralston,* 5 Wn.2d 36, 104 P.2d 934 (1940). It is therefore clear the instant action presents a mixture of legal and equitable issues.

Safeway contends appellant is not entitled to a jury trial, arguing that where any of the main issues in an action is equitable, equity takes jurisdiction for all purposes and there is no right to a trial by jury on *any* of the issues presented. *Coleman v. Highland Lumber, Inc.,* 46 Wn.2d 549,

283 P.2d 123 (1955); *Maas v. Perkins,* 42 Wn.2d 38, 253 P.2d 427 (1953); *Waagen v. Gerde,* 36 Wn.2d 563, 219 P.2d 595 (1950). In recent decisions this rule has been challenged, however. As we noted in *Cox v. Charles Wright Academy, Inc.,* 70 Wn.2d 173, 176, 422 P.2d 515 (1967):

> Except in cases which fall *peculiarly within equitable jurisdiction,* or where remedies and defenses are made available by statute without a jury, the right of trial by jury shall be inviolate. Const. art. 1, § 21.

(Italics ours.)

Indeed, in light of the promulgation of CR 38 and 39, the Court of Appeals, Divisions One and Two, have specifically abandoned the *Coleman* rule. *Scavenius v. Manchester Port Dist.,* 2 Wn. App. 126, 129, 467 P.2d 372 (1970); *see Knudsen v. Patton, supra; Johnson v. Perry,* 20 Wn. App. 696, 699, 582 P.2d 886 (1978); *Rao v. Auburn Gen. Hosp.,* 19 Wn. App. 124, 129, 573 P.2d 834 (1978); *Lines v. Yakima School Dist. 7,* 12 Wn. App. 939, 941 n.3, 533 P.2d 140 (1975); *Thompson v. Butler,* 4 Wn. App. 452, 455–56, 482 P.2d 791 (1971). We find persuasive, and hereby adopt, the reasoning set forth in *Scavenius v. Manchester Port Dist., supra* at page 129, wherein the court stated:

> We do not think CR 38 and 39 were intended to nor could they constitutionally alter the constitutional right of trial by jury. However, we believe they were intended to grant more discretion in the trial court than *Coleman v. Highland Lumber, Inc., supra,* in allowing some legal issues to be tried to the jury even though one of the parties has raised an equitable issue. . . . With liberal joinder rules, third party practice, interpleader actions, etc., lawsuits have become more sophisticated to the point that a defendant, for example, by the simple expedient of joining a third party and asserting equitable relief or perhaps by inviting an equitable defense, could defeat plaintiff's basic right of trial by jury on his action against the defendants were the Coleman rule applied. . . .
>
> We hold that the only effect of the adoption of CR 38 and 39 is to vest in the trial court wide discretion in cases involving both legal and equitable issues, to allow a jury on some, none, or all issues presented.

In determining whether a case is primarily equitable in nature or is an action at law, the trial court is accorded wide discretion, the exercise of which will not be disturbed except for clear abuse. *Coleman v. Highland Lumber, Inc., supra; Pollock v. Ralston, supra.* This discretion should be exercised with reference to a variety of factors including, but not necessarily limited to, the following factors set forth in *Scavenius* at pages 129–30:

> (1) who seeks the equitable relief; (2) is the person seeking the equitable relief also demanding trial of the issues to the jury; (3) are the main issues primarily legal or equitable in their nature; (4) do the equitable issues present complexities in the trial which will affect the orderly determination of such issues by a jury; (5) are the equitable and legal issues easily separable; (6) in the exercise of such discretion, great weight should be given to the constitutional right of trial by jury and if the nature of the action is doubtful, a jury trial should be allowed; (7) the trial court should go beyond the pleadings to ascertain the real issues in dispute before making the determination as to whether or not a jury trial should be granted on all or part of such issues.

Applying these factors to the instant case, we conclude the trial court did not abuse its discretion in denying appellant's motion for a jury trial. Appellant is the party who seeks equitable relief and also demands a jury trial on all issues raised. Moreover, because the relief sought by appellant is primarily equitable in nature, the trial court did not err in so concluding. Finally, because of the close relationship between appellant's allegations, *i.e.,* breach of the lease, unfair competition and interference with contractual relations, and the requested remedies, *i.e.,* declaration of abandonment, monetary damages, restoration of the premises, and an accounting, we conclude the trial court did not err in ruling that the legal issues would not be easily separable for submission to a jury.

■ On appeal, appellant and amicus curiae contend a

jury trial should have been granted on the issue of Safeway's alleged violation of the Washington Consumer Protection Act. RCW 19.86. We do not reach the merits of this contention because the trial court record does not reveal any allegation of Safeway's violation of RCW 19.86. Although appellant's amended complaint asserts Safeway engaged in "unfair competition", no reference to the Consumer Protection Act is made. Furthermore, during oral argument on the motion for a jury trial, and again on motion for reconsideration, appellant did not raise or address the issue. Finally, our review of the entire record indicates appellant did not submit the case to the trial court on a theory encompassing the Consumer Protection Act. Issues not raised before the trial court will not be considered for the first time on appeal. *Barnes v. Seattle School Dist. 1,* 88 Wn.2d 483, 563 P.2d 199 (1977); *Fuqua v. Fuqua,* 88 Wn.2d 100, 558 P.2d 801 (1977).

## II
### Right To Assign

Appellant assigns as error numerous findings of fact and conclusions of law which support the trial court's ruling that Safeway did not breach the Lease by vacating the premises and subletting to Uwajimaya. More specifically, appellant contends the assignment/sublease provision of the Lease is not absolute and that the Lease, when considered in its entirety, requires Safeway to operate and assign in a commercially reasonable manner. It is asserted Safeway violated the Lease by vacating the Center space without first having acquired a replacement, leaving the vacated store unoccupied for a period of months, and most importantly, by subletting to an operation which was neither primarily a grocery nor which would be capable of generating comparable gross sales and customer traffic. We do not agree.

Appellant first contends the Lease provisions should be construed most strongly against Safeway because it drafted

the document. *See Dirk v. Amerco Marketing Co.,* 88 Wn.2d 607, 614, 565 P.2d 90 (1977). Appellant, however, fails to support its contention with any reference to the record, and, indeed, our own review of the proceedings reveals no evidence that the Lease was drafted by Safeway. Accordingly, we reject the assertion that the Lease should be construed against Safeway and in favor of appellant.

Turning to the substance of appellant's argument, we note the Lease contains an assignment/subletting provision which permits the lessee to "assign this lease or sublet the whole or any part of the leased premises." It is clear this provision places no limitations whatsoever on the manner of assignment by the lessee, or on the type of business the lessee may assign or sublet to. Also a careful examination of the remainder of the Lease reveals no other express or implied limitation on the right to assign or sublease.

Despite the clear and unambiguous language of the Lease, appellant contends Safeway's right to sublease is not absolute for two reasons. First, it is contended the Lease, taken together with the incorporated plans and specifications, indicate the "Safeway" space in the Center would be a large scale supermarket upon which the economic interdependence of all Center tenants would be based. Second, appellant contends the presence of the percentage rental provision in the Lease required Safeway to sublease only to a tenant capable of generating comparable gross sales and customer traffic. We reject both contentions.

██ Although the incorporated plans and specifications indicate the Center was initially to have a large scale supermarket, it is clear the Lease gives the lessee an unconditional right to thereafter assign or sublease to the party of its choice. It would be wholly at odds with this specific manifestation of the parties' intent for us to now *imply* a covenant limiting that right. In any event, implied covenants are not favored in the law. *Fuller Mkt. Basket, Inc. v. Gillingham & Jones, Inc.,* 14 Wn. App. 128, 133–34, 539 P.2d 868 (1975). In order for courts to imply a covenant in a contract, the following requirements must be satisfied:

(1) the implication must arise from the language used or it must be indispensible to effectuate the intention of the parties; (2) it must appear from the language used that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it; (3) implied covenants can only be justified on the grounds of legal necessity; (4) a promise can be implied only where it can be rightfully assumed that it would have been made if attention had been called to it; (5) there can be no implied covenant where the subject is completely covered by the contract.

*Fuller Mkt. Basket, Inc. v. Gillingham & Jones, Inc., supra* at 134, quoting from *Cousins Inv. Co. v. Hastings Clothing Co.,* 45 Cal. App. 2d 141, 149, 113 P.2d 878 (1941). In light of the clear and unambiguous language of the assignment/sublease provision, and in the absence of other Lease provisions limiting that right or substantial evidence manifesting a contrary intent, it is apparent the foregoing requirements have not been satisfied.

With regard to the percentage rental provision in the Lease, appellant relies on case authority interpreting such provisions to require the lessor to occupy and use the rental property and to employ reasonable diligence to operate the business in a manner productive of profits and receipts. *See Lippman v. Sears, Roebuck & Co.,* 44 Cal. 2d 136, 280 P.2d 775 (1955); *Silverstein v. Keane,* 19 N.J. 1, 115 A.2d 1 (1955). In these cases, whether a special covenant is implied principally depends on whether the parties regarded the amount of the stipulated minimum rental as an adequate reflection of the full rental value of the premises, or whether they contemplated the full value would be realized only through the percentage provision. *Tuttle v. W.T. Grant Co.,* 6 N.Y.2d 754, 159 N.E.2d 202, 186 N.Y.S.2d 655 (1960). These decisions, however, are inapposite to the case at hand. First, our review of the record indicates there is sufficient evidence that the amount of the stipulated minimum rental was based upon a reasonable return to the appellant on its investment. Second, the decisions relied upon by appellant are inapplicable to a situation where, as

here, the issue is the right to assign or sublease, and the lease itself provides for the unconditional right to sublease. A case closer in point is *Williams v. Safeway Stores, Inc.,* 198 Kan. 331, 339–40, 424 P.2d 541 (1967) wherein the court stated:

> The lessors state the provision for payment of rental based upon a percentage of gross sales from the premises was designed and inserted in the lease to protect them against inflation. They indicate that although the lease was assignable, it was assignable only for a use which would provide to lessors a comparable rental. The difficulty of accepting this argument is that the design of such a provision is to permit percentage rentals to fluctuate both up and down or to be discontinued when the gross sales from the premises are less than the stated sum. If this court determines an implied covenant in the lease existed which required payment of comparable rentals we say, in effect, it was intended as a fixed rental requiring comparable sales. The effect would be to change the percentage of income rental into a fixed rental based upon past sales experience.
>
> . . . If this covenant is implied in the lease it would impair the expressed right to assign set out in the fifth paragraph. Safeway could not determine what figure amounted to a comparable rental. Neither could Safeway look into the future to determine which prospective sublessee would have gross sales from the premises to produce the required percentage rental. It would be unreasonable and undesirable to imply such a covenant when it would be vague, uncertain, impracticable and impossible to determine.

We conclude the trial court did not err in ruling Safeway did not breach the Lease by vacating the premises and subletting to Uwajimaya.

### III
### GOOD FAITH DEALING

■ Appellant next contends the trial court erred in concluding Safeway acted in complete good faith in closing its store at the Center, opening a supermarket at the nearby location, and negotiating and obtaining a sublease. The scope of review on appeal is limited to determining whether

the findings are supported by substantial evidence, and if so, whether the findings in turn support the trial court's conclusions of law and judgment. Substantial evidence is evidence of sufficient quantum to persuade a fair–minded person of the truth of the declared premise. *Holland v. Boeing Co.*, 90 Wn.2d 384, 390–91, 583 P.2d 621 (1978); *Morgan v. Prudential Ins. Co.*, 86 Wn.2d 432, 545 P.2d 1193 (1976). After carefully reviewing the record as a whole we conclude there is sufficient evidence to support the trial court's conclusion.

The evidence introduced at trial indicates that while Safeway was a tenant at the Center, it twice requested and was denied additional grocery space at the Center. In 1976, Safeway began investigating the possibility of relocating to other larger commercial space and informed appellant of its intention to do so. Six months before closing its Center store, Safeway listed the space with Seattle–area real estate brokers for sublease, and also began negotiations with Pier I Imports. On July 13, 1977, Safeway wrote appellant and invited it to forward the names of any potential subtenants it was aware of. When the Pier I negotiations terminated, Safeway began discussions with Uwajimaya. It is also clear that after Safeway closed its store, it left its fixtures in place for an additional month to permit appellant or its proposed subtenants to purchase them. It is apparent Safeway's conduct was wholly within the boundaries of good faith.

## IV
### UNFAIR COMPETITION AND INTERFERENCE WITH CONTRACTUAL RELATIONS

Appellant also contends the trial court erred in concluding Safeway "did not breach any duty to plaintiff, or engage in unfair competition." We do not agree.

■ Our disposition of the "unfair competition" issue is hampered by our uncertainty as to whether the trial court was referring to the common law tort of unfair competition or a violation of the Consumer Protection Act. RCW 19.86.

On appeal, appellant has not advanced any facts or law to support a claim based on the tort of unfair competition. We will not attempt to construct an argument in appellant's behalf in light of its failure to do so. *In re Marriage of Croley,* 91 Wn.2d 288, 294, 588 P.2d 738 (1978); *State v. Wood,* 89 Wn.2d 97, 569 P.2d 1148 (1977).

█ Appellant contends, on appeal, that Safeway's actions constitute a violation of the Consumer Protection Act. As noted previously, however, our review of the trial court record fails to reveal that appellant submitted the case to the court on a Consumer Protection Act theory. Even assuming that a Consumer Protection Act allegation has been properly raised, appellant's argument is without merit. Appellant has presented no evidence to establish that Safeway's conduct was "injurious to the public interest", a necessary element in a claim brought under RCW 19.86. *Lightfoot v. MacDonald,* 86 Wn.2d 331, 544 P.2d 88 (1976). The mere allegation that, as a result of Safeway's conduct, "the public was literally scared away from the previously bustling center" does not satisfy the "public interest" requirement.

We also reject appellant's contention that Safeway's conduct amounted to tortious interference with business and contractual relations. Appellant relies exclusively on *Cherberg v. Peoples Nat'l Bank,* 88 Wn.2d 595, 564 P.2d 1137 (1977) to support its position that a breach of a lease may under some circumstances also constitute a basis of liability in tort for intentional interference with contractual relations. *Cherberg,* however, is not in point because we hold Safeway did not breach the Lease. Additionally, appellant has not alleged or established that Safeway's conduct resulted in either breach or termination of a relationship or contract, a necessary element of the tort. *See Island Air, Inc. v. LaBar,* 18 Wn. App. 129, 139, 566 P.2d 972 (1977).

## V
### COUNTERCLAIM FOR SLANDER OF TITLE
### AND TORTIOUS INTERFERENCE

Safeway contends the trial court erred in dismissing its counterclaim. First, it is asserted, the trial court improperly concluded appellant's allegation did not constitute slander of title. We do not agree.

■ The elements of slander of title are:

that the words spoken be false; that they must be maliciously spoken and that they must result in pecuniary loss or injury to the party complaining. They must also be spoken with reference to some pending sale or purchase of property . . . and it must be such a slander as goes to defeat the plaintiff's title.

*Lee v. Maggard,* 197 Wash. 380, 382, 85 P.2d 654, 87 P.2d 106 (1938). It is apparent Safeway has failed to establish the essential element of malice. Malice is not present where the allegedly slanderous statements were made in good faith and were prompted by a reasonable belief in their veracity. *See Frankfort Oil Co. v. Snakard,* 279 F.2d 436 (10th Cir.), *cert. denied,* 364 U.S. 920, 5 L. Ed. 2d 259, 81 S. Ct. 283 (1960); *Elliott v. Elliott,* 252 Ark. 966, 482 S.W.2d 123 (1972); *Rogers Carl Corp. v. Moran,* 103 N.J. Super. 163, 246 A.2d 750 (1968); *Barnett v. Hitching Post Lodge, Inc.,* 101 Ariz. 488, 421 P.2d 507 (1966). The initiation of litigation to determine the rights of the respective parties to a lease cannot, without more, be characterized as malicious conduct.

Safeway also contends the trial court erred in concluding appellant was not liable on a claim of tortious interference. Again we do not agree.

■ We need not decide whether each of the elements necessary to establish tortious interference is present in this case, *see Island Air, Inc. v. LaBar, supra,* because it well established that "[o]ne who in good faith asserts a legally protected interest of his own which he believes may be impaired by the performance of a proposed transaction is not guilty of tortious interference." *Singer Credit Corp.*

*v. Mercer Island Masonry, Inc.,* 13 Wn. App. 877, 884, 538 P.2d 544 (1975). Accordingly, we conclude appellant's initiation of litigation to protect its interests in the shopping center lease does not, in and of itself, constitute tortious interference with a contractual relationship or business expectancy.

The trial court is affirmed.

UTTER, C.J., and ROSELLINI, WRIGHT, BRACHTENBACH, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.

Reconsideration denied November 3, 1980.