[Nos. 41509-7-II; 41744-8-II.   Division Two.   June 1, 2012.]

COST MANAGEMENT SERVICES, INC., *Respondent*, v. THE CITY OF
LAKEWOOD ET AL., *Appellants*.

COST MANAGEMENT SERVICES, INC., *Respondent*, v. THE CITY OF
LAKEWOOD, *Appellant*.

262

*Heidi A. Wachter, City Attorney,* and *Michael L. McKenzie* and *Matthew S. Kaser, Assistants,* for appellants.

*Geoffrey P. Knudsen*; and *Franklin G. Dinces* (of *The Dinces Law Firm*), for respondent.

¶1 JOHANSON, A.C.J. — The city of Lakewood appeals a superior court decision that Cost Management Services (CMS) is not obligated to pay a utility tax for business conducted outside of Lakewood. Lakewood claims that the trial court (1) lacked jurisdiction because CMS failed to exhaust administrative remedies, (2) improperly denied Lakewood's request for a jury trial, (3) erred in issuing a writ of mandamus, and (4) entered erroneous findings of fact and conclusions of law. We affirm because (1) CMS was not required to exhaust administrative remedies when Lakewood did not issue a final order on CMS's refund claim, and the superior court maintained concurrent jurisdiction; (2) the trial court did not abuse its discretion in denying Lakewood's request for a jury trial; (3) the trial court properly issued the writ of mandamus; and (4) the trial court's findings of fact and conclusions of law are not erroneous.

## FACTS

¶2 CMS is a Mercer Island business that arranges for the purchase of natural gas by its customers from various third parties. CMS acts as its customers' agent, and it monitors the natural gas market and informs its customers regarding natural gas prices. CMS has two Lakewood customers: Pierce Transit and Saint Clare Hospital.

¶3 Both of CMS's Lakewood customers obtain natural gas the same way. CMS works with a supplier[1] that provides natural gas via pipeline for delivery at the "North Tacoma City Gate" of the Northwest Pipeline Company, a site outside of Lakewood. These customers each separately contract with Puget Sound Energy (PSE) for transportation and delivery of their natural gas from the North Tacoma City Gate to their Lakewood business locations.

¶4 CMS performs almost all of its duties from its Mercer Island headquarters. Daily, CMS's account coordinators use software to remotely read their customers' gas meters to gauge how much gas PSE delivered the previous day. After reading the meter, these account coordinators notify both the supplier and PSE how much gas they should provide and deliver to the customer at the next delivery. On average, account coordinators spend a total of 20 minutes daily performing this task for its Lakewood customers.

¶5 Over the years, CMS has maintained a limited physical presence in Lakewood. Traditionally, CMS employees spent just one and a half hours per year in Lakewood—for an annual holiday visit and a rare natural gas market update meeting. According to CMS, it has direct costs of $115 annually in Lakewood (for the annual holiday visit and occasional natural gas market update meeting) and zero indirect costs. In April 2010, CMS employees discontinued all Lakewood visits, and CMS's absence from Lakewood has not altered or affected its agency relationships or the administration of its contracts with either of its Lakewood customers.

¶6 In 1999, Lakewood passed Ordinance 215, codified at chapter 3.52 of the Lakewood Municipal Code (LMC), which levies a "utility" tax on

> everyone engaged in or carrying on the business of selling, brokering or furnishing [natural gas] for domestic, business or

---

[1] Suppliers include Shell Energy, Occidental, and/or Avista, depending on which customer and the date of the sale.

industrial consumption, a tax equal to 5.0 percent of the total gross income, not including the amount of the tax, from such business in the City during the period for which the tax is due.

LMC 3.52.050(D); Clerk's Papers (CP) at 61.

¶7 Between January 1, 2004 and October 30, 2008, CMS remitted to Lakewood $715,940.05 under this tax. At the time, CMS believed it was paying a use tax that its Lakewood customers owed. To calculate its amount paid, CMS reported its Lakewood taxable revenues as 100 percent of the amounts Lakewood customers paid CMS. Then in 2008, CMS learned of a court case that raised doubts as to whether CMS actually owed this tax; so, CMS stopped paying it.

¶8 On November 6, 2008, CMS sent a letter to Lakewood claiming a refund on the excess taxes it paid between January 1, 2004 and September 30, 2008. The claim asserted that Lakewood owed CMS a refund because "the company does no business in the City of Lakewood" and that "the city does not impose any occupation tax but does impose utility taxes." CP at 91.

¶9 On May 13, 2009, Choi Halladay, Lakewood's assistant city manager of finance, sent CMS a *"NOTICE AND ORDER/DEMAND FOR TAX PAYMENT"* (Notice and Order). The Notice and Order specified that (1) CMS last made utility tax payments in October 2008, for taxes accrued through September 2008; (2) CMS was delinquent in its taxes from October 2008 through the Notice and Order date; and (3) CMS must obtain a Lakewood business license to conduct its utility business within the City and to pay all past due and owing utility taxes, including interest and penalties. It also provided that CMS could appeal within 10 days and that failure to appeal would waive its rights to an administrative hearing and determination in the matter. CMS applied for a business license as directed, but it did not appeal the Notice and Order.

¶10 In June 2009, CMS filed a complaint in Pierce County Superior Court, raising two causes of action: (1) a

state law action for "money had and received," seeking refund of amounts CMS paid in error to Lakewood and (2) an action under LMC 3.52.150 for refund of overpaid taxes.[2] CP at 1. Lakewood raised numerous affirmative defenses, including that the superior court lacked jurisdiction, that CMS failed to exercise its rights in a timely manner within the statute of limitations, and that CMS failed to exhaust administrative remedies before filing its superior court complaint. Lakewood also counterclaimed, arguing that CMS owed unpaid natural gas taxes under chapter 3.52 LMC since CMS stopped paying the tax in the fall of 2008 and that Lakewood was entitled to injunctive relief prohibiting CMS from making natural gas transactions in Lakewood until it paid all its natural gas taxes.

¶11 Both parties sought summary judgment. In February 2010, the trial court denied Lakewood's motion for summary judgment. In May 2010, the trial court denied CMS's summary judgment motion.

¶12 Thereafter, both parties filed additional motions for partial summary judgment. Lakewood asserted that the statute of limitations barred CMS's claims accruing more than three years before commencement of the litigation— before June 24, 2006. CMS filed a motion requesting the court to determine that (1) CMS operates as an agent on behalf of customers; (2) the only tax that Lakewood alleges CMS owes is that imposed by LMC 3.52.050(D); (3) such a tax is imposed on the business of selling, brokering, or furnishing natural gas in Lakewood; (4) such tax is measured by CMS's gross income in Lakewood; (5) CMS's gross revenue from Lakewood was not greater than $582,328.84 between October 1, 2005, and September 30, 2008; (6) CMS

---

[2] LMC 3.52.150 provides:

Any money paid to the City through error, or otherwise not in payment of the tax imposed . . . or in excess of such tax, shall, upon the request of the taxpayer, be credited against any tax due or to become due from such taxpayer hereunder, or, upon the taxpayer ceasing to do business in the City, be refunded to the taxpayer.

paid $523,543.36 in tax over that same time period; and (7) the amount of tax CMS owed Lakewood during that period was not greater than $29,116.44, and thus, the trial court should award CMS partial summary judgment of $494,426.92.[3]

¶13 In September 2010, the trial court granted Lakewood's motion for partial summary judgment, barring CMS's claims for refunds on taxes paid before June 24, 2006. The court also dismissed CMS's claims under the LMC. The trial court granted CMS's motion for partial summary judgment, finding (1) CMS operates as an agent on behalf of its customers; (2) the only tax Lakewood alleges CMS owes is imposed by LMC 3.52.050(D); (3) that tax is imposed on the business of selling, brokering, or furnishing artificial, natural, or mixed gas in Lakewood; (4) that tax is measured by CMS's Lakewood gross income; (5) CMS's Lakewood gross income was not greater than $460,113.72 between June 24, 2006, and September 30, 2008; (6) CMS paid $414,367.04 of tax for the time period after June 24, 2006; (7) the amount of tax CMS owed Lakewood for the relevant time period was not greater than $23,005.69.

¶14 Then, in October 2010, while CMS's lawsuit was pending in superior court, CMS filed a petition for writ of mandamus in Pierce County Superior Court against Lakewood and Halladay. It requested that they "take action on [CMS's refund] claim pending since November 6, 2008 for the refund of erroneously paid taxes." CP at 735. Lakewood opposed the writ, but the trial court granted it on November 5, 2010, commanding Lakewood and Halladay to take action on CMS's tax refund claim by November 19,

---

[3] According to CMS, this was the difference between what CMS paid Lakewood and the maximum that CMS could possibly have owed Lakewood for the time period it listed, with interest at the judgment rate from the dates paid to the refund date.

2010. Lakewood complied with the writ, and after complying, Lakewood timely appealed the granting of the writ.[4]

¶15 Meanwhile, Lakewood requested that CMS's June 2009 complaint be resolved by jury trial. The trial court denied Lakewood's request, reasoning that CMS's claims "are primarily, if not exclusively, equitable in nature." CP at 707. Accordingly, it ordered Lakewood's jury demand stricken.

¶16 The trial court held a two-day bench trial in December 2010. The trial court ultimately issued a written ruling, concluding that CMS did not "sell" natural gas: "The evidence at trial established that CMS did not own any natural gas—the natural gas was owned [by the suppliers]. These entities were the actual sellers of the gas." CP at 710. The trial court also found that CMS did not furnish the natural gas:

> Puget Sound Energy owned the distribution system for the gas and entered into separate contracts with [CMS customers] for transportation of the natural gas purchased through the CMS contracts. Puget Sound Energy delivered from the City Gate outside Lakewood to the customer's business location in the City of Lakewood. The evidence further established that PSE collected and paid a tax to the City of Lakewood under LMC [3.52.050(D)] for the transportation of the gas from the City Gate distribution point to the customers' business location in the City. This Court concludes that PSE was the entity furnishing natural gas to [CMS's Lakewood customers].

CP at 710.

¶17 The trial court also addressed whether CMS served as a natural gas "broker" in Lakewood. It considered the testimony of CMS president Beth Beatty, who stated that brokering was a term of art in the industry and that CMS was an agent, not a broker. The trial court considered Lakewood's argument that a broker typically is one who

---

[4] We consolidated the appeal of the writ of mandamus with the appeal of the trial court action on the original complaint.

acts as an agent or intermediary. The trial court ultimately did not decide whether CMS was a broker, as "even if CMS could be considered to have engaged in brokering natural gas, a point on which this Court reaches no conclusion, CMS did not engage in brokering activity *in the City of Lakewood*." CP at 710 (emphasis added).

¶18 The trial court also described how CMS rarely traveled to Lakewood:

> There was no dispute that at all relevant times, CMS offices and employees were located outside the City of Lakewood[.] The contracts were administered from its offices in Mercer Island. The only contacts inside the City of Lakewood were for the purposes of annual holiday visits and very occasional marketing meetings, 1-2 per year at most. The ongoing activities of administering the contract between CMS and its customers were handled by computer and telephone, all outside the City of Lakewood. In this regard, the Court notes that CMS stopped all contacts inside the City of Lakewood in April 2010.

CP at 710-11. Therefore, the trial court reasoned that CMS's occasional physical presence in Lakewood did not constitute selling, furnishing, or brokering natural gas.

¶19 Consequently, the trial court ruled that CMS was entitled to a full refund of all taxes paid from June 24, 2006 through the date it discontinued payment of its Lakewood taxes, along with prejudgment interest as allowed by statute. It rejected Lakewood's counterclaim that CMS owed taxes for the period after it stopped paying them, as CMS was not engaged in a taxable event in Lakewood. Lakewood appeals the trial court's judgment, its order striking Lakewood's jury demand, its findings of fact and conclusions of law, its order granting partial summary judgment, and its order denying Lakewood's motion for summary judgment.

## ANALYSIS

### I. Exhausting Administrative Remedies

■ ■ ¶20 Lakewood incorrectly argues that CMS's failure to exhaust administrative remedies bars CMS from obtaining judicial relief in superior court. Whether exhaustion is required is a question of law. *Sintra, Inc. v. City of Seattle*, 119 Wn.2d 1, 19 n.10, 829 P.2d 765, *cert. denied*, 506 U.S. 1028 (1992). And, we review questions of law de novo. *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 880, 73 P.3d 369 (2003).

■ ¶21 The exhaustion doctrine requires parties to exhaust administrative remedies (1) when a claim is cognizable in the first instance by an agency alone; (2) when the agency's authority establishes clearly defined machinery for the submission, evaluation, and resolution of complaints by aggrieved parties; and (3) when the relief sought can be obtained by resort to an exclusive or adequate administrative remedy. *Phillips v. King County*, 87 Wn. App. 468, 479, 943 P.2d 306 (1997), *aff'd*, 136 Wn.2d 946 (1998). If the administrative mechanisms available can alleviate the harmful consequences of the governmental activity at issue, a litigant must first pursue those remedies before resorting to court. *Thun v. City of Bonney Lake*, 164 Wn. App. 755, 763, 265 P.3d 207 (2011), *review denied*, 173 Wn.2d 1035 (2012). A party's failure to employ and exhaust available administrative remedies merits dismissal of its lawsuit as premature. *See Wright v. Woodard*, 83 Wn.2d 378, 382-83, 518 P.2d 718 (1974).

■ ¶22 Whether the exhaustion doctrine applies depends on the nature of the relationship between the administrative agency and the superior court. By law, an agency and the superior court may share concurrent original jurisdiction. *Chaney v. Fetterly*, 100 Wn. App. 140, 145, 995 P.2d 1284, *review denied*, 142 Wn.2d 1001 (2000). And,

although concurrent original jurisdiction enables the referral of a claim from the court to an administrative agency, it does not deprive the superior court of its own jurisdiction. *Chaney*, 100 Wn. App. at 148.

## A. No Final Administrative Decision

■ ¶23 Lakewood argues that CMS's failure to appeal the May 13, 2009 Notice and Order bars it from contesting the application of the Lakewood tax to its activities. CMS filed its refund claim in November 2008, and on May 13, 2009, Lakewood sent CMS its Notice and Order providing simply, "OFFICIAL NOTICE that Cost Management Services is delinquent in payment of utility taxes to the City of Lakewood. The City of Lakewood does hereby make a DEMAND FOR PAYMENT of all past due taxes, including interest and penalties." CP at 95.

¶24 CMS persuasively argues that this Notice and Order did not constitute a denial of CMS's refund claim but was, instead, a demand for payment of taxes.[5] The Notice and Order (1) seeks payment of taxes due after October 2008, when CMS stopped paying the tax; (2) does not reference CMS's November 2008 refund claim, nor does it deny the claim; and (3) simply orders CMS to apply for a Lakewood business license and pay past due taxes. Lakewood cannot now characterize that Notice and Order to pay taxes as a final agency determination denying CMS's refund claim. Because the Notice and Order did not constitute a final administrative action on CMS's refund claim, CMS's failure to appeal the Notice and Order to the hearing examiner does not preclude CMS from contesting, in superior court, as part of its refund claim, the application of Lakewood's tax to its business activities.

## B. No Need To Exhaust Administrative Remedies

¶25 The LMC outlines a hearing examiner system to review administrative decisions. Ch. 1.36 LMC. Under this

---

[5] By May 2009, Lakewood believed CMS owed six months' worth of taxes.

system, parties wishing to appeal a notice and order issued by a city administrator must file an appeal with the city hearing examiner within 10 business days from receipt of a notice and order. LMC 5.02.180(A)(4). Upon receipt of a written appeal, the city clerk shall set a hearing date "[a]s soon as practicable." LMC 5.02.190(C). Failure to appeal waives all rights to an administrative hearing and determination of the matter. LMC 5.02.180(A)(4).

¶26 CMS did not pursue any administrative remedy on the Notice and Order before filing in superior court. Lakewood contends that its hearing examiner system provides adequate administrative remedies to review its Notice and Order and, thus, CMS may not enjoy judicial review without exhausting these available administrative procedures. The LMC provides an administrative remedy only for review of a final order. CMS is not appealing from the May 13 Notice and Order demanding payment of current and future taxes but instead was seeking a tax refund for taxes already paid. Thus, CMS had no administrative mechanism to pursue a refund of taxes wrongly paid.

¶27 CMS contends that the trial court maintained proper jurisdiction because (1) the superior court's original jurisdiction extends to cases in equity, including this one; (2) parties need not exhaust administrative remedies in excise tax cases because those cases involve issues of statutory construction, and parties do not need to refer statutory construction questions to administrative agencies; and (3) this case involves the legality of a tax. Because CMS's case primarily involved an action in equity for money had and received, the superior court retained original jurisdiction. Accordingly, we need not explore CMS's other arguments.

¶28 Under the Washington Constitution, article IV, section 6, as well as RCW 2.08.010, the superior court could take original jurisdiction over actions in equity. CMS's state

action[6] was "for money had and received." CP at 1. A claim for money had and received is an equitable claim. *Coast Trading Co. v. Parmac, Inc.*, 21 Wn. App. 896, 902, 587 P.2d 1071 (1978) ("The count for 'money had and received' is an ancient common-law remedy with equitable overtones; it is based upon quasi contract or contract implied in law.").

¶29 Ultimately, CMS's claim was an action in equity for "money had and received"; and, under both the Washington Constitution and state statute, the superior court properly maintained original jurisdiction to hear the equity claim. Even had the hearing examiner maintained jurisdiction to hear these claims under the LMC, the superior court concurrently retained original jurisdiction. Under this system of concurrent original jurisdiction, CMS could refer its claim to either the hearing examiner or superior court. *See Chaney*, 100 Wn. App. at 145-46.

## II. RIGHT TO JURY TRIAL

¶30 We review a superior court's ruling on the availability of a jury trial for a clear abuse of discretion. *Brown v. Safeway Stores, Inc.*, 94 Wn.2d 359, 368, 617 P.2d 704 (1980) ("In determining whether a case is primarily equitable in nature or is an action at law, the trial court is accorded wide discretion, the exercise of which will not be disturbed except for clear abuse."). We may vacate the judgment and remand the entire matter for a jury trial if the trial court wrongfully denied a plaintiff's request for a jury trial. *See Wilson v. Horsley*, 137 Wn.2d 500, 509, 974 P.2d 316 (1999).

¶31 Under RCW 4.40.060, "[a]n issue of fact, in an action for the recovery of money only . . . shall be tried by a jury, unless a jury is waived." And, there is a right to a jury trial where the civil action is purely legal in nature. *Peters v.*

---

[6] CMS's original complaint listed two causes of action, a state law action and an action under Lakewood's municipal code. Before trial, the trial court dismissed the municipal claim for lack of jurisdiction.

*Dulien Steel Prods., Inc.*, 39 Wn.2d 889, 891, 239 P.2d 1055 (1952). Conversely, there is no right to a jury trial where the action is purely equitable in nature. *Dexter Horton Bldg. Co. v. King County*, 10 Wn.2d 186, 193, 116 P.2d 507 (1941). For cases with both equitable and legal issues, "[t]he overall nature of the action is determined by considering all the issues raised by all of the pleadings." *Brown*, 94 Wn.2d at 365.

¶32 When evaluating whether a matter is primarily equitable or legal, the trial court should exercise its discretion with reference to a nonexhaustive factor list. Factors include (1) who seeks the equitable relief; (2) if the person seeking the equitable relief also demands a jury trial; (3) if the main issues concern primarily matters of law or equity; (4) if the equitable issues present complexities at trial that will affect the orderly determination of such issues by the jury; (5) if the equitable and legal issues may be easily separated; (6) if the nature of the action is doubtful, a jury trial should be allowed; and (7) if the trial court should go beyond the pleadings to ascertain the real issues in dispute before making the determination as to whether to grant a jury trial on all or part of the issues. *Brown*, 94 Wn.2d at 368.

¶33 The trial court recognized that CMS's primary claim was an equitable action for money had and received—a refund of taxes paid by mistake. The trial court stated, "[T]he real issues in dispute, all of which arise in the context of a taxpayer dispute for refund of taxes allegedly paid by mistake, arise in equity and are not legal issues." CP at 705. A claim for money had and received is an equitable claim. *Coast Trading*, 21 Wn. App. at 902. Furthermore, the court characterized Lakewood's counterclaim, seeking an injunction barring CMS from selling, brokering, or furnishing natural gas to Lakewood customers, as equitable.

¶34 The trial court also recognized potential difficulties a jury might have with this case. It considered Lakewood's

proposed jury instructions. But the trial court stated that a trial "would present complexities, involving statutory construction and application of tax code, making the presentation of the case to a jury difficult. To the extent there are any purely legal issues, such issues are not easily separable from the equitable claims." CP at 706. Despite the "great weight to the right of the defendant to a jury trial," the trial court held that the claims were not suited for a jury trial. CP at 705.

¶35 The trial court carefully weighed the facts and applied the *Brown* factors before it denied Lakewood's jury demand. Given that the trial court appreciated the importance of one's jury trial rights, but at the same time weighed those rights against the complexities of this case, the trial court did not base its decision on unreasonable or untenable grounds. Accordingly, the trial court did not clearly abuse its discretion in denying Lakewood's motion for a jury trial. Absent any clear abuse of discretion, we affirm the trial court's decision to strike Lakewood's demand for a jury trial.

### III. WRIT OF MANDAMUS

¶36 Lakewood next argues that the superior court erred by issuing the writ of mandamus because (1) Lakewood had already acted on CMS's refund claim, (2) CMS failed to exhaust administrative remedies, and (3) CMS belatedly sought the writ. We disagree.

¶37 A statutory writ is an extraordinary remedy which a court should issue only when there is no plain, speedy, and adequate remedy available in the ordinary course of law. *City of Kirkland v. Ellis*, 82 Wn. App. 819, 827, 920 P.2d 206 (1996). We will not disturb a trial court's decision regarding a plain, speedy, and adequate remedy unless the trial court's exercise of its discretion was manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons. *River Park Square, LLC v. Miggins*, 143 Wn.2d 68, 76, 17 P.3d 1178 (2001).

¶38 Before a court may issue a writ, the applicant must satisfy three elements: "(1) [T]he party subject to the writ is under a clear duty to act, RCW 7.16.160; (2) the applicant has no 'plain, speedy and adequate remedy in the ordinary course of law,' RCW 7.16.170; and (3) the applicant is 'beneficially interested.' RCW 7.16.170." *Eugster v. City of Spokane*, 118 Wn. App. 383, 402, 76 P.3d 741 (2003), *review denied*, 151 Wn.2d 1027 (2004). Furthermore, a party must generally exhaust available administrative remedies before seeking a writ of mandamus. *Summit-Waller Citizens Ass'n v. Pierce County*, 77 Wn. App. 384, 397-98, 895 P.2d 405, *review denied*, 127 Wn.2d 1018 (1995). And, although there is no statutory provision governing the time in which a plaintiff must seek a writ of mandamus, the plaintiff must seek the writ within the same period as that allowed for an appeal. *Teed v. King County*, 36 Wn. App. 635, 641, 677 P.2d 179 (1984). Lakewood asserts that the trial court erred in issuing the writ because Lakewood's May 13, 2009 Notice and Order constituted a final action on CMS's refund claim. Thus, it reasons that CMS's failure to appeal the Notice and Order to the local hearing examiner bars a writ of mandamus because CMS failed to exhaust administrative remedies. As noted above, CMS had no obligation to pursue administrative relief because Lakewood's Notice and Order did not constitute a final agency determination. Absent Lakewood's taking any direct express action on CMS's refund claim, CMS had no administrative remedies to pursue regarding its refund claim.

¶39 Lastly, Lakewood claims CMS belatedly sought the writ of mandamus. The statutory grounds for granting a writ, RCW 7.16.160, do not include a statute of limitations; so a timely period for seeking a writ of mandamus would mirror that allowed for a timely appeal under Lakewood municipal law. *See Teed*, 36 Wn. App. at 641. But again, because Lakewood's Notice and Order was not a final administrative order responding to CMS's refund claim, Lakewood never triggered CMS's appeal period. Therefore,

we hold that the writ of mandamus was properly issued, as the trial court's issuance of the writ of mandamus was not manifestly unreasonable, exercised on untenable grounds, or for untenable reasons. *See River Park Square, LLC*, 143 Wn.2d at 76.

¶40 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

HUNT and PENOYAR, JJ., concur.

Review granted at 176 Wn.2d 1011 (2013).