[No. 31771-1-II.   Division Two.   August 9, 2005.]

COSMOPOLITAN ENGINEERING GROUP, INC., *Appellant*, v. ONDEO DEGREMONT, INC., ET AL., *Respondents*.

---

886

*Sandra J. Rovai*, for appellant.

*Alan R. Merkle, Margarita V. Latsinova*, and *Christina L. Haring* (of *Stoel Rives, L.L.P.*), for respondents.

¶1 Van Deren, J. — Cosmopolitan Engineering Group, Inc. (Cosmopolitan), appeals the trial court's (1) refusal to award attorney fees against both Ondeo Degremont, Inc. (Ondeo) and its surety bond under RCW 18.27.040(6); (2) denial of prejudgment interest on the jury's damages award to Cosmopolitan for its unpaid fees by Ondeo; and (3) summary dismissal of its materialmen's lien claim. We affirm the trial court's denial of prejudgment interest and its summary dismissal of Cosmopolitan's lien claim, but we reverse and remand for entry of judgment for attorney fees against Ondeo under RCW 18.27.040(6).

## FACTS

A. Wastewater Development Plans

¶2 Miller Brewing Company (Miller)[1] sought to develop its brewery plant in Tumwater, Washington, into a wastewater treatment plant and also investigated the possibility of a remote facility to reuse wastewater in Olympia, Washington. Miller eventually cancelled both development plans.

¶3 Ondeo was Miller's engineering contractor for the wastewater treatment plant. It is undisputed that in 2001, Cosmopolitan was Ondeo's subcontractor for the wastewater treatment plant and that Cosmopolitan was responsible for engineering design and local permitting. In September 2001, Cosmopolitan contracted directly with Miller to investigate the possibility of a remote reuse wastewater facility in Olympia.

¶4 Then in July 2002, Ondeo and Cosmopolitan together developed a proposal at Miller's request to explore the feasibility of a remote facility to reuse wastewater in Olympia. Although it is undisputed that Ondeo and Cosmopolitan jointly submitted this proposal, the parties dispute the proposal's contents and whether Ondeo terminated its relationship with Cosmopolitan after this proposal.

¶5 In December 2002 and January 2003, Cosmopolitan attended two meetings with officials from the city of Tumwater regarding the development of the wastewater treatment plant. Cosmopolitan later invoiced Ondeo for its professional services related to these meetings. Ondeo disputes that Cosmopolitan had a contractual relationship with them at this time, arguing that Cosmopolitan acted solely at Miller's request.

¶6 On January 8, 2003, Miller publicly announced its plans to sell its brewery plant in Tumwater and cancelled all its prior development plans. On March 28, 2003, Cosmopolitan filed a materialmen's lien under chapter 60.04

---

[1] The parties' stipulated by motion to dismiss Miller from this appeal. The motion was granted by a commissioner of this court and Miller is no longer a party to this appeal.

RCW against Miller's property for its unpaid services, including its 2001 work with Ondeo and its December 2002 and January 2003 meetings with the city of Tumwater. Cosmopolitan later amended its lien claim to $100,420 for unpaid services. Cosmopolitan's lien claim identified Ondeo as an indebted party and Miller as the property owner.

¶7 In July 2003, Cosmopolitan filed a complaint to foreclose on its lien. Cosmopolitan's complaint named both Ondeo and its contractor's bond under the contractor registration act (CRA), chapter 18.27 RCW.

## B. Summary Judgment and Jury Trial on Contract and Equitable Theories

¶8 Miller and Ondeo moved for summary dismissal of Cosmopolitan's lien claim. The trial court granted Miller's motion and dismissed the lien claim because it found that Miller had paid Cosmopolitan for the direct contract they had. After a request for clarification, the court stated that it was dismissing the lien claim against Ondeo because Cosmopolitan untimely filed the claim on the alleged work it performed for Ondeo.

¶9 But the court allowed Cosmopolitan's breach of contract and its equitable claims against Ondeo to go forward, finding that the complex facts relating to their professional relationship made summary judgment inappropriate.

¶10 Neither party objected to the court's jury instructions directing the jury to consider Cosmopolitan's breach of contract theory and its equitable theories of promissory estoppel and unjust enrichment/quantum meruit. The jury instructions informed the jury that Cosmopolitan's contract and equitable theories of recovery were mutually exclusive. Although the court expressly asked the parties at the jury instruction conference if a special verdict form or interrogatory were required, Cosmopolitan proposed, and the court accepted, a general verdict form that specified only the jury's damages award but did not identify the underlying legal or equitable theory supporting a verdict for damages.

¶11 A jury found for Cosmopolitan and awarded the company all its claimed unpaid fees for a total of $100,420.

## C. Posttrial Motions

¶12 Miller and Ondeo moved for attorney fees, based in part on their assertion that they defended a frivolous lien claim. Cosmopolitan also moved for attorney fees and costs under the prevailing party fee shifting provision of RCW 18.27.040(6). Cosmopolitan also requested prejudgment interest based on the jury's award.

¶13 The court awarded Miller and Ondeo attorney fees for dismissal of the lien claim, although for an amount less than the parties' requested. The court awarded Cosmopolitan attorney fees against Ondeo's bond under RCW 18-.27.040(6) for $3,000. Although the court found Cosmopolitan's interpretation of RCW 18.27.040(6)'s fee shifting provision persuasive, it ultimately sided with Ondeo's argument that RCW 18.27.040(6) was designed to limit awards to the contractor's bond without imposing an obligation on the contractor. The court also denied Cosmopolitan's request for prejudgment interest, ruling that given the general verdict form, it could not precisely determine how the jury determined its award.

## ANALYSIS

### RCW 18.27.040(6)

¶14 Cosmopolitan argues that the trial court misinterpreted RCW 18.27.040(6) by awarding attorney fees solely against Ondeo's bond, but not against Ondeo. Cosmopolitan emphasizes that the trial court erroneously based its ruling on *Subcontractors & Suppliers Collection Services v. Mc-Connachie*, 106 Wn. App. 738, 741, 24 P.3d 1112 (2001). Ondeo argues on appeal that Cosmopolitan has waived this argument because of its failure to propose a special verdict form specifying a breach of contract claim. Ondeo also asserts that Cosmopolitan's interpretation of

RCW 18.27.040(6), to require an attorney fees award against both a contractor and its bond, is overbroad.

¶15 We review the trial court's ruling de novo because statutory interpretation is a matter of law. *State v. Beaver*, 148 Wn.2d 338, 344, 60 P.3d 586 (2002). "The court's fundamental objective is to ascertain and carry out the legislature's intent, and if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *State ex rel. Citizens Against Tolls v. Murphy*, 151 Wn.2d 226, 242, 88 P.3d 375 (2004). We also examine the statutory scheme. *Citizens*, 151 Wn.2d at 242.

¶16 The CRA "is a comprehensive scheme governing contractors" that "defines a contractor, creates categories of exemptions, regulates business practices and requires that contractors be registered." *Int'l Commercial Collectors, Inc. v. Carver*, 99 Wn.2d 302, 304, 661 P.2d 976 (1983). RCW 18-.27.140 expressly states the CRA's purpose is to "afford protection to the public including *all* persons, firms, and corporations furnishing labor, materials, or equipment to a contractor from *unreliable,* fraudulent, *financially irresponsible,* or incompetent contractors." (Emphasis added.)

¶17 "A contractor in substantial compliance with the CRA may sue in *contract or under alternative theories* such as quantum meruit." *Bort v. Parker*, 110 Wn. App. 561, 571, 42 P.3d 980 (2002) (emphasis added) (relying on *Murphy v. Campbell Inv. Co.*, 79 Wn.2d 417, 422-23, 486 P.2d 1080 (1971)); *see also Williamson, Inc. v. Calibre Homes, Inc.*, 147 Wn.2d 394, 400, 54 P.3d 1186 (2002) (reaffirming *Murphy* and the application of the substantial compliance doctrine to the CRA).

¶18 The CRA requires all contractors to file a surety bond and obtain public liability and property damage insurance. RCW 18.27.040, .050. A party may sue a contractor and its bond for breach of contract or equitable relief. RCW 18.27.040, .080.

¶19 In 2001, the legislature added a fee shifting provision for prevailing parties that stated:

The *prevailing party* in an action *filed under this section* against the contractor *and* contractor's bond or deposit, for breach of contract by a party to a construction contract, *is entitled to costs, interest, and reasonable attorneys' fees.* The *surety* upon the bond *is not liable* in an aggregate amount in excess of the amount named in the bond nor for any monetary penalty assessed pursuant to this chapter for an infraction.

RCW 18.27.040(6)[2] (emphasis added).

¶20 Given the foregoing case law, the CRA's purpose, and RCW 18.27.040(6)'s plain language, we hold that as a matter of law a prevailing party under this provision is entitled to attorney fees against both the opposing contractor and its bond. Thus, the trial court erred in ruling that RCW 18.27.040(6) limits a prevailing party's attorney fees, interest, and costs to the other contractor's bond only.

¶21 Cosmopolitan contends that interpreting RCW 18-.27.040(6) to apply to both a contractor and its bond is consistent with the CRA's purpose to protect plaintiffs from negligent contractors. We agree. As aptly stated in Cosmopolitan's appellate brief, "The circumstances in which the bond would be sufficient to pay both the contractor's liability and the costs, interest, and attorneys' fees would be rare. The Legislature would not have been providing meaningful relief if it limited such an award to only the amount of the contractor's bond." Br. of Appellant at 15.

¶22 Cosmopolitan also correctly states that RCW 18-.27.040(6)'s express limits of recovery on the surety bond is based on the bond's inherent vicarious liability for the contractor's breach of an agreement. *See* Br. of Appellant at 11 ("The contractor has the primary obligation and the surety agrees to undertake the obligation, up to the amount of its bond.") (relying on RESTATEMENT (THIRD) SURETYSHIP AND GUARANTY § 1 cmt. d (1996)). Thus, RCW 18.27.040(6)'s inclusion of this legal principle should not be interpreted as the legislature's intent to deny a prevailing party attorney fees against a contractor. Ondeo provides no meaningful response to these assertions.

---

[2] LAWS OF 2001, ch. 159, § 3.

¶23 Ondeo's arguments supporting the trial court's interpretation of RCW 18.27.040(6) are unpersuasive. Ondeo ignores the court's acknowledgment that RCW 18.27-.040(6)'s plain language supported Cosmopolitan's interpretation. *See* Report of Proceedings (RP) (Apr. 30, 2004) at 14 ("I tend to agree that it [RCW 18.27.040(6)] appears to speak both of the contractor and the contractor's bond."). Further, the trial court's exclusive reliance on Ondeo's interpretation of *McConnachie* is misplaced. *McConnachie*'s review of the CRA predates RCW 18-.27.040(6), which the legislature added in 2001. And *McConnachie* concerned the invalidity of a party's *service of process* under RCW 18.27.040 that did *not* seek recovery against a contractor's bond. 106 Wn. App. at 741. Here, Cosmopolitan sued Ondeo and its surety bond under RCW 18-.27.040, and the parties do not dispute Cosmopolitan's proper service under RCW 18.27.040(3).

¶24 Ondeo's reference to the American Rule, which generally requires each party be responsible for their own attorney fees, fails to recognize the established principle that a special statute like RCW 18.27.040(6) controls. *See In re Impoundment of Chevrolet Truck,* 148 Wn.2d 145, 160-61, 60 P.3d 53 (2002); *see also Wilkerson v. United Inv., Inc.,* 62 Wn. App. 712, 716, 815 P.2d 293 (1991).

¶25 Finally, Ondeo contends on appeal that Cosmopolitan was required to submit a special verdict form specifying a breach of contract theory in order to prevail under RCW 18.27.040(6). But Ondeo did not advocate this theory at trial.[3] And Ondeo does not challenge the trial court's attorney fee award to Cosmopolitan against the surety bond. Thus, we decline to review Ondeo's argument because of its inconsistency with its arguments below. RAP

---

[3] We note that Ondeo's cursory mention of this argument in one footnote of a trial brief is unpersuasive given the entire record. Further, RAP 10.3(a) and (b) preclude our review because Ondeo's appellate brief fails to cite this footnote.

2.5; *Postema v. Postema Enter., Inc.*, 118 Wn. App.185, 193, 72 P.3d 1122 (2003), *review denied*, 151 Wn.2d 1011 (2004).[4]

¶26 In summary, we hold that RCW 18.27.040(6)'s fee shifting provision for a prevailing party applies to both a contractor and its surety bond. We remand for the determination of appropriate attorney fees and costs against Ondeo under RCW 18.27.040 because the trial court did not make this finding. *See, e.g., Mehlenbacher v. DeMont*, 103 Wn. App. 240, 245, 11 P.3d 871 (2000) (if trial court does not make express findings of fact for attorney fees award, remand for recalculation is required). But we emphasize that the trial court noted that the efforts of Cosmopolitan's counsel merited an increased award for attorney fees under lodestar factors.[5] *See* RP at 38 ("I could have found that [Cosmopolitan's counsel] could have collected attorneys' fees under the principles in *Absher [Constr. Co. v. Kent Sch. Dist. No. 415*, 77 Wn. App. 137, 148, 890 P.2d 1071 (1995)] to actually increase her fees by as much as 30 percent based upon the skill with which she prosecuted the case and the

---

[4] The CRA allows a contractor to substantially comply with its standing provision to sue under the statute for both breach of contract and equitable relief. RCW 18.27.080; *Bort v. Parker*, 110 Wn. App. 561, 572, 42 P.3d 980 (2002). Consequently, we note without holding that Ondeo's interpretation of RCW 18-.27.040(6) to provide attorney fees only when a plaintiff specifically asserts a breach of contract claim appears unduly narrow and inconsistent with the CRA's purpose and intent. *See also Williamson, Inc. v. Calibre Homes, Inc.*, 147 Wn.2d 394, 401, 54 P.3d 1186 (2002) (emphasizing that "[t]he substantial compliance doctrine is rooted in the judiciary's longstanding effort to give legislative commands a rational interpretation founded upon their design"). *Compare* RCW 18-.27.080 (CRA cause of action is "for the collection of *compensation for the performance of any work or* for breach of any contract") (emphasis added) *with* RCW 18.27.040(3) (action against surety bond for "any of the items referred to in this section" including breach of contract and also " *claimed labor . . . performed and benefits accrued . . . or* the claimed contract work was substantially completed or abandoned") (emphasis added).

[5] We do not overlook Ondeo's contention that Cosmopolitan failed to segregate fees. But Cosmopolitan provided a detailed motion that segregated its fees charged to Miller from those charged to Ondeo. Further, contrary to Ondeo's selective quotation of *Hume v. Am. Disposal Co.*, 124 Wn.2d 656, 672, 880 P.2d 988 (1994), a party must attempt to segregate fees; however, a trial court can exercise its discretion, examine the record, and find a segregation of fees impractical or unreasonable. *Loeffelholz v. Citizens for Leaders with Ethics & Accountability Now*, 119 Wn. App. 665, 690-91, 693, 82 P.3d 1199, *review denied*, 152 Wn.2d 1023 (2004) (citing *Hume*).

result she achieved. I'm saying this on the record and I don't mind being held to that.").

¶27 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

ARMSTRONG and HUNT, JJ., concur.

Review granted at 156 Wn.2d 1024 (2006).