[No. 29177-4-III. Division Three. December 29, 2011.]

MARK BROTHERTON ET AL., *Respondents*, v. KRALMAN STEEL STRUCTURES, INC., *Appellant*.

728

*Terry E. Miller*, for appellant.

*Lenard L. Wittlake* (of *Lenard L. Wittlake PLLC*) for respondents.

¶1 SIDDOWAY, J. — Kralman Steel Structures Inc. appeals the damages awarded to Mark and Georgie Brotherton as the cost to replace and make associated repairs to a defective driveway constructed by Kralman Steel at the Brothertons' home. It argues that the trial court's award included " 'betterments' "[1] that were never a part of its promised performance. It also contends that the trial court misread RCW 18.27.040(6), a provision of the registration of contractors act, chapter 18.27 RCW, to authorize an award of the Brothertons' attorney fees and costs against it. We affirm the court's award of damages, which is supported by evidence of the cost required to reconstruct the driveway to the promised standard. We disagree with the trial court's construction of RCW 18.27.040(6), however, and reverse its award of attorney fees, which exceeds the limitation set

---

[1] Br. of Appellant at 6.

forth in that statute as construed in *Cosmopolitan Engineering Group, Inc. v. Ondeo Degremont, Inc.*, 159 Wn.2d 292, 149 P.3d 666 (2006).

## FACTS AND PROCEDURAL BACKGROUND

¶2 In late 2007, the Brothertons contracted with Kralman Steel, a licensed general contractor, to build a garage for their home. The standard terms and conditions in Kralman Steel's contract of agreement for construction warranted "[a]ll work [would be] done in a workman like manner with a quality recognized by the construction industry standards as good to excellent." Ex. 12. Among the negotiated terms of the contract was a provision that stated in pertinent part only, "**Option**—Remove and replace existing driveway. . . . Costs before tax [will] be $4.50 per square foot." *Id.* When the parties agreed that the optional driveway construction would be performed, the term was "expanded verbally by the parties," with Jeff Kralman explaining that because the location of adjoining sidewalks and structures would prevent pouring the entire driveway to fall toward the street for drainage, the driveway would be poured to slope toward the center and thereby channel water away from the Brothertons' house and their neighbor's property, into the street. Clerk's Papers (CP) at 29 (Finding of Fact 2).

¶3 Kralman Steel's concrete contractor began pouring the driveway in early September 2008 and completed pouring and cutting control joints within a few days. When finished, the driveway did not slope toward the center as promised and drainage problems were apparent immediately. Mr. Kralman acknowledged the problem and said he would fix it. In October 2008, Kralman Steel removed and replaced part of the driveway but it did not solve the drainage problem; water still pooled and drained toward the Brothertons' house. Moreover, after the attempted repair, the concrete experienced uncontrolled and unsightly cracking.

¶4 In addition to problems with the driveway, the Brothertons' sidewalk was damaged during the construction of the garage and driveway. The approach to the driveway was clipped by the scoop of a small front-end loader when Kralman Steel's crew backed it off a trailer. Preexisting but minor cracks in the Brothertons' sidewalk were worsened as a result of the concrete trucks backing over the driveway.

¶5 The Brothertons brought the action below against Kralman Steel, its subcontractor, and the surety on Kralman Steel's contractor's bond, seeking damages for breach of contract.[2] At trial, the Brothertons presented testimony from three experts. Jennifer Russell, a geologist with expertise in geotechnical engineering, testified that the cracking was due to an inadequate aggregate base under portions of the driveway and insufficiently thick concrete. According to Ms. Russell's measurements, the driveway was only 2½ inches thick in some spots, while the International Residential Code requires a minimum concrete thickness of 3½ inches.

¶6 Brit Watson, a general contractor with over 15 years' experience working with concrete, and Ron Courson, a contractor specializing in concrete with 39 years' experience, identified several problems with Kralman Steel's work. Mr. Watson testified that the grade of the driveway did not meet industry standards for slope per foot to ensure proper drainage. He testified that joints to control cracking in the slab as the concrete moved during temperature changes or drying shrinkage were not cut quickly enough after the concrete was poured and were placed too far apart. Mr. Courson agreed with Mr. Watson's testimony as to the drainage problem near the Brotherton home and testified that the industry standard of care required the use of expansion felt in addition to control joints to reduce stress cracking. Finally, Mr. Courson testified that industry stan-

---

[2] The lawsuit originally named the concrete subcontractor and his surety as well, but claims against those parties were dismissed before trial.

dard requires a minimum thickness of concrete of more than 3 inches, particularly on the outside edges of the driveway; Mr. Watson testified to a standard of 3½ to 4 inches.

¶7 Given this evidence, the trial court concluded Kralman Steel's work was defective and that the "uncontrolled, unsightly cracking, insufficient thickness, insufficient preparation of the base, and the puddling of water caused by improper drainage [were] more than de[ minimis] defects." CP at 31 (Conclusion of Law 3). For the proper remedy, the court relied on the testimony of the Brothertons' experts that removal and replacement was required, noting that "it seems to be pretty common in the construction industry and in the concrete industry, that [if] you have a bad pour, . . . [y]ou rip it out and you do it right." Report of Proceedings (RP) at 201.

¶8 The Brothertons presented bids obtained from several contractors, including one from Mr. Watson on behalf of his firm, Four B Enterprises. The trial court ultimately found the Four B bid for $12,796.20 to be reasonable and awarded damages in that amount, capping damages against the surety at the $12,000.00 amount of its bond. The Four B bid included the labor and material necessary to tear out and dispose of existing concrete, and to fix the damaged driveway, sidewalk, curb, and gutter.

¶9 Although the bond was consumed by the award of damages, the trial court initially concluded that the Brothertons were entitled to recover a reasonable attorney fee, costs, and interest from Kralman Steel under RCW 18.27-.040(6). Kralman Steel objected to the fee award and moved for reconsideration, citing the Washington Supreme Court's decision in *Ondeo*, 159 Wn.2d 292, prompting the court to request briefing on the attorney fee issue from the parties. After further review, the court held to its position that fees were recoverable, reasoning that while *Ondeo* "at first glance seems to be binding precedent [it] is not binding precedent in this case because the statute, RCW 18.27.040,

was reworded and reenacted in 2007 to clarify that it applies both to actions against contractors and actions against bonds." CP at 27. Kralman Steel appealed.

## ANALYSIS

## I

¶10 Kralman Steel first assigns error to the court's findings of fact supporting its damages award. Kralman Steel argues that by relying on the Four B bid, which Kralman Steel argues included betterments, the trial court awarded damages that exceeded the cost to repair defects in its work by $3,500. Br. of Appellant at 4.

¶11 Kralman Steel relies on evidence that the only specifications for driveway construction ever discussed by the parties were that the driveway—then 3½ inches thick—was to be replaced with a like driveway. Kralman argues that the Four B proposal relied upon by the court for its award of damages went beyond replacing the driveway, providing for a driveway that would be 5 rather than 3½ inches thick; for installation of rebar when none was provided by the Kralman Steel-Brotherton agreement; for 5½-sack concrete rather than 5-sack concrete; and for removal and replacement of the sidewalk, curb, and gutter approach, which Jeff Kralman testified was undamaged by his construction. As further support for its contention that the Four B bid included betterments, Kralman Steel points to the testimony of Mr. Kralman that the industry cost for placing and finishing driveway concrete at the time of trial had increased from the $4.50 per square foot Kralman Steel had bid in 2007 to only $5.00 per square foot, for what should have been a total cost to repair and replace of only $6,700.00.

¶12 In each case, Kralman Steel ignores countervailing evidence presented by the Brothertons. The Brothertons presented evidence that Kralman Steel used 5½-sack con-

crete on its attempted repair—the same as Four B proposed. Mr. Watson testified that his proposal did not use rebar for reinforcement but only used rebar pins to connect the concrete slab to the adjacent house; he testified that this was a substitute and equivalent, not a betterment, for Kralman Steel's process of "doweling in" (RP at 138) new concrete to existing concrete. As to the greater thickness of his proposed slabs, Mr. Watson testified that concrete can be strengthened by either pouring it thicker or adding rebar reinforcement. If rebar reinforcement is used, the concrete does not have to be poured as thick. Either way, there is no material cost impact as "the cost of the extra concrete compared to what the time and labor" of laying the rebar "might be a wash." RP at 64. Finally, the Brothertons point to evidence that Kralman Steel's construction did damage their sidewalk and curb, requiring repair.

¶13 When the trial court has weighed the evidence, we review factual matters to determine whether the trial court's factual findings are supported by substantial evidence and, if so, whether the findings support the conclusions of law and judgment. *Frank Coluccio Constr. Co. v. King County*, 136 Wn. App. 751, 761, 150 P.3d 1147 (2007). "Substantial evidence is evidence that is sufficient to persuade a fair-minded person of the truth of the declared premise." *Panorama Vill. Homeowners Ass'n v. Golden Rule Roofing, Inc.*, 102 Wn. App. 422, 425, 10 P.3d 417 (2000), *review denied*, 142 Wn.2d 1018 (2001). In a construction defect case, "[o]nce the injured party has established the cost to remedy the defects, the contractor bears the burden of challenging this evidence in order to reduce the award, including providing the trial court with evidence to support an alternative award." *Id.* at 428.

¶14 In Washington, "[c]ontract damages are ordinarily based on the injured party's expectation interest and are intended to give the injured party the benefit of its bargain." *Id.* at 427 (citing *Eastlake Constr. Co. v. Hess*, 102 Wn.2d 30, 46, 686 P.2d 465 (1984)). A party injured by a

breach of contract may recover all damages that accrue naturally from the breach, including any incidental or consequential losses the breach caused. *Floor Express, Inc. v. Daly*, 138 Wn. App. 750, 754, 158 P.3d 619 (2007).

¶15 When damages are a result of defective performance in construction, as distinguished from incomplete performance, " 'it may not be possible to prove the loss in value to the injured party with reasonable certainty.' " *Eastlake*, 102 Wn.2d at 47-48 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 348 cmt. c (1981)). In such cases, Washington has adopted section 348 of the *Restatement*, which recognizes that the injured party can usually recover damages based on the cost to remedy the construction defects, as a "sensible and workable approach to measuring damages in construction contract cases." *Id.* at 48. Following this approach, even if the cost to remedy defects and restore the injured party's expectation interest results in " 'a recovery somewhat in excess of the loss in value to him, it is better that he receive a small windfall than that he be undercompensated by being limited to the resulting diminution in the market price of his property.' " *Id.* (quoting RESTATEMENT § 348 cmt. c).

¶16 Here, the trial court found that Kralman Steel promised to construct the driveway in a workmanlike manner according to local industry standards, CP at 29 (Finding of Fact 2), and failed to do so in several respects, CP at 29-30 (Findings of Fact 3-6). The trial court found that "[t]he proper remedy for these defects is to rip out the driveway and re-pour it with the correct preparation and correct slope and thickness, followed by appropriate saw cuts." CP at 30 (Finding of Fact 7). Kralman Steel does not challenge any of these findings, which are verities on appeal. *Young v. Young*, 164 Wn.2d 477, 482 n.2, 191 P.3d 1258 (2008). Kralman Steel's only challenge is that the award of damages includes the asserted betterments. Yet the court was presented with testimony by the Brothertons' experts that the work contemplated by the Four B proposal

was a substitute for, and equivalent to, the construction approach that Mr. Kralman testified satisfied local industry standards. While Mr. Kralman testified to the contrary, "it is a firmly established rule" that when substantial evidence supports the trial court's findings, appellate courts "will not retry factual disputes [ ]on appeal." *Ferree v. Doric Co.*, 62 Wn.2d 561, 568, 383 P.2d 900 (1963). We do not substitute our judgment for that of a trial court on issues of weight and credibility. *Fisher Props., Inc. v. Arden-Mayfair, Inc.*, 115 Wn.2d 364, 369, 798 P.2d 799 (1990). Kralman Steel has demonstrated no error supporting reversal of the court's award of damages.

## II

¶17 Kralman Steel's second assignment of error is to the court's construction of RCW 18.27.040(6) following its amendment in 2007.

¶18 Chapter 18.27 RCW requires contractors in Washington to register and to file a surety bond with the Department of Labor and Industries. RCW 18.27.040 provides a mechanism for consumers, subcontractors, and other injured persons to recover against the bond. *Ondeo*, 159 Wn.2d at 294. In *Ondeo*, an engineering subcontractor brought an action against Ondeo and its bond and obtained a substantial jury verdict. It then moved for attorney fees against Ondeo and its bond based on the attorney fee provision in RCW 18.27.040(6), which provided at that time:

> "The prevailing party in an action filed under this section against the contractor and the contractor's bond or deposit, for breach of contract by a party to a construction contract, is entitled to costs, interest, and reasonable attorneys' fees. The surety upon the bond is not liable in an aggregate amount in excess of the amount named in the bond nor for any monetary penalty assessed pursuant to this chapter for an infraction."

159 Wn.2d at 295 (emphasis omitted) (quoting former RCW 18.27.040(6) (2001)). The trial court had limited Cosmopoli-

tan's recovery of attorney fees to $3,000, the amount available under the bond. In a partially published opinion, the Court of Appeals reversed, holding "as a matter of law a prevailing party under this provision is entitled to attorney fees against both the opposing contractor and its bond," based on, among other reasons, the plain language of the provision. *Cosmopolitan Eng'g Grp., Inc. v. Ondeo Degremont, Inc.*, 128 Wn. App. 885, 892, 117 P.3d 1147 (2005), *rev'd*, 159 Wn.2d 292.

¶19 The Supreme Court accepted review and reversed. The starting point for its analysis was the American rule, the general rule in Washington that each party in a civil action will pay its own attorney fees and costs. 159 Wn.2d at 296. While acknowledging that the American rule can be changed by statute, the Supreme Court did not agree with the Court of Appeals that the registration of contractors act, when read in its entirety, plainly provides for fees against the contractor. The principal textual support for the Supreme Court's construction of RCW 18.27.040(6) was the language of the provision that fees were recoverable "in an action *filed under this section* against the contractor and contractor's bond or deposit" (emphasis added) and language elsewhere in the provision again referring to actions "filed under this section." *See Ondeo*, 159 Wn.2d at 299. Examining RCW 18.27.040 (entitled **"Bond or other security required—Actions against—Suspension of registration upon impairment"**) and surrounding provisions, it observed that the statute speaks of and functions as a mechanism for bringing action against the bond, identifying filing requirements, statutes of limitations, service requirements, surety liability, priority of payment, and consequences of exhausting the bond, all specific to suits against the bond. *Id.* at 297-98. Reviewed in its entirety, the court concluded that actions "filed under this section" refer only to actions to recover against the bond. *Id.* at 299.

¶20 The court noted that this court reached a similar conclusion in *Subcontractors and Suppliers Collection Ser-*

*vices v. McConnachie*, 106 Wn. App. 738, 24 P.3d 1112 (2001). In that case, the plaintiff relied upon substituted service provisions of the registration of contractors act to serve a complaint in which it alleged both common law claims against a contractor and a claim against the contractor's bond. The statute of limitations had run on the claim against the bond. At issue was whether the plaintiff could rely on the substituted service for its common law claims against the contractor. This court held that despite language in the statute referring to actions against a contractor, "the overall focus of RCW 18.27.040(3) remains the contractor's bond and deposit" and that "[b]oth the purpose of the statute and its language support the notion that service on the Department [of Labor and Industries] is for the limited purpose of realizing on a contractor's bond or deposit." *Id.* at 743.

¶21 The Supreme Court's textual analysis in *Ondeo* went further, reasoning that the "need to establish underlying contractor liability explains the legislature's reference to 'an action filed under this section against the contractor *and* contractor's bond or deposit.' " 159 Wn.2d at 300-01 (quoting RCW 18.27.040(6)). It noted that a plaintiff could establish the contractor's liability in a separate action and sue only the surety under RCW 18.27.040. Where a plaintiff chose instead to use a single action under the statute to accomplish both bond-related purposes, "it is reasonable to read RCW 18.27.040(6)'s reference to *an* action against a contractor and its bond as a single action to recover against the bond." *Id.* at 301. In short, the court resolved the textual issue in *Ondeo* by differentiating between an action to recover against the bond—an action that can be asserted against the bond alone or against the contractor and the bond, but either way is the only type of action "filed under" RCW 18.27.040—and common law claims against a contractor, which are not "filed under" RCW 18.27.040. It concluded that "[r]eview of RCW 18.27.040 in its entirety demonstrates that actions 'filed

under this section' refer only to actions for recovery against the contractor's bond." *Id.* at 299.

¶22 Having explained the textual support for its reading of the statute, the Supreme Court addressed why it was the only reasonable reading:

> Had the legislature intended to authorize attorney fees for prevailing parties both in actions against contractors and in actions against the bond, the legislature could have referred to multiple actions or made it clear that fees were warranted either in an action against the contractor *or* in an action against the contractor's bond.

*Id.* at 301. In a similar vein, responding to Cosmopolitan's argument that reading the fee provision to apply to all actions against contractors would " 'afford protection to the public,' " an express purpose of the registration of contractors act, the court observed that while that may be true, "the context of the statutory scheme is important" and

> [w]hile contractor registration in general, and bond requirements in particular, are obviously intended to protect the public from irresponsible contractors, this purpose should not necessarily be used to extend the protections beyond the mechanisms expressly provided for in the relevant statute. . . . Had the legislature intended the attorney fee provision to apply to more than suits against the bond, it could have located the attorney fee provision elsewhere in the statutory scheme. Furthermore, under [the suggested] reading of the statute, a plaintiff suing to recover both from the contractor and the contractor's bond could recover attorney fees from the contractor personally but a plaintiff who chose to file only against the contractor, but not the bond, could not recover those same attorney fees. It would be illogical for the legislature to make attorney fee recovery against the contractor dependent upon whether the plaintiff also filed suit against the bond.

*Id.* at 297 (quoting RCW 18.27.140 (identifying purpose)), 302.

¶23 Finally, the court held in *Ondeo* that even if the legislature's reference to a suit against the contractor and

the bond rendered the provision ambiguous, "aids of statutory construction including legislative history produce the same result." *Id.* at 303. The court relied upon the fact that as a statute in derogation of the common law American rule, the attorney fee provision must be narrowly construed, *see id.*, and on a review of legislative history of the statute, which "indicates the legislature intended the attorney fee provision to apply only to actions against a contractor's bond." *Id.* at 306. After reviewing all, the *Ondeo* court concluded, "We hold that in actions against the contractor, attorney fees will continue to be governed by the American rule or by contract." *Id.*

¶24 Kralman Steel points out that the legislature has had over five years since *Ondeo* was decided to amend the registration of contractors act to change the *Ondeo* result. The statute has been amended four times: in 2007, 2008, 2009, and 2011. None of the amendments has made any of the changes that *Ondeo* itself suggested would make clear that attorney fees were recoverable in an action against the contractor. *See id.* at 301 (statute could broaden attorney fee recovery by referring to multiple actions or making it clear that fees were warranted either in an action against the contractor *or* in an action against the contractor's bond), 302 (legislature could broaden result by locating the attorney fee provision elsewhere in the statutory scheme). The legislature is presumed to be familiar with prior judicial construction of its acts, and its failure to amend a statute for a considerable period of time after it has been judicially construed indicates an intent to concur in that construction. *Buchanan v. Int'l Bhd. of Teamsters*, 94 Wn.2d 508, 511, 617 P.2d 1004 (1980).

¶25 The Brothertons nonetheless argue, and the trial court was eventually persuaded, that the 2007 amendment of the registration of contractors act supersedes *Ondeo*'s construction of the statute and extends the attorney fee remedy to actions against a contractor. RCW 18.27.040(6) was amended in 2007 as follows:

The prevailing party in an action filed under this section against the contractor and the contractor's bond or deposit, for breach of contract by a party to ((a)) the construction contract involving a residential homeowner, is entitled to costs, interest, and reasonable attorneys' fees. The surety upon the bond or deposit is not liable in an aggregate amount in excess of the amount named in the bond or deposit nor for any monetary penalty assessed pursuant to the chapter for an infraction.

LAWS OF 2007, ch. 436, § 4. These changes clarify that the action may be against a deposit made in lieu of bond. Beyond that, they limit rather than expand the attorney fee remedy by making it exclusively a residential homeowner remedy.

¶26 The Brothertons argue that the crucial 2007 change appears in RCW 18.27.040(3), however, which was amended to provide that "[a]ny person, firm, or corporation having a claim against the contractor for any of the items referred to in this section may bring suit against *the contractor and* the bond," with the italicized language (among other language) being new. We understand the Brothertons to contend that with this change, *any* action against the contractor—even one asserting common law claims—is now "an action filed under this section" eligible for attorney fee recovery under RCW 18.27.040(6).

¶27 We disagree. In light of the legislature's presumed acquiescence in the Supreme Court's conclusion in *Ondeo* that reference in the statute to "*an* action against a contractor and its bond" is reasonably read to refer to "a single action to recover against the bond," 159 Wn.2d at 301, the language relied upon by the Brothertons does not help them. Kralman Steel's position, on the other hand, is advanced by a different change to RCW 18.27.040(3) made by the 2007 amendment: language dealing with substitute service under the statute was revised to confer personal jurisdiction "for suit on claimant's *claim* against the contractor and the bond." (Emphasis added.) Reference to a single "claim" against the contractor and the bond is con-

sistent with *Ondeo*'s holding that the reference in the statute to actions "under this section" means only an action against the bond, whether it is brought against the contractor and the surety or the surety alone.

¶28 The Brothertons have identified no legislative history that supports their position that any part of the 2007 amendment was intended to change the *Ondeo* result. And the House Bill Analysis for the 2007 amendments to the registration of contractors act, while making two passing references to attorney fee recovery, makes no reference to *Ondeo* and does not suggest that the bill will modify the extent to which attorney fees are recoverable. *See* House Commerce & Labor Comm., H.B. Analysis on H.B. 1843, 60th Leg., Reg. Sess. (Wash. 2007), *available at* http://apps .leg.wa.gov/documents/billdocs/2007-08/Pdf/Bill%20Reports/ House/1843.HBA%2007.pdf.

¶29 *Ondeo* therefore remains the controlling construction of the attorney fee provision. It does not provide a basis for the Brothertons' recovery of fees in this case because the priority provision of the statute applies the bond amount to claims for breach of contract before applying it to court costs, interest, and attorney fees. *Ondeo*, 159 Wn.2d at 298 (RCW 18.27.040(4) "sets forth the priority of payment when the claims against the bond exceed the bond amount."). The $12,000 bond will be consumed by the award of damages, so there is no bond amount remaining from which attorney fees could be awarded. We therefore reverse the fee award.

¶30 The Brothertons seek an award of attorney fees on appeal under RAP 18.1, relying again on RCW 18.27.040. Given our construction of the statute, it does not provide a basis for recovery of fees on appeal for the same reason it does not support an award of fees below.

¶31 We affirm the trial court's award of damages, reverse its award of attorney fees, and remand for entry of a judgment consistent with this opinion.

KULIK, C.J., and KORSMO, J., concur.

Review denied at 173 Wn.2d 1036 (2012).