IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JPMORGAN CHASE BANK NA,<br><br>Respondent,<br><br>v.<br><br>DAVID ARTHUR MORTON; NCO FINANCIAL SYSTEMS, INC.; OCCUPANTS OF THE PREMISES; and ANY PERSONS OR PARTIES CLAIMING TO HAVE ANY RIGHT, TITLE, ESTATE, LIEN OR INTEREST IN THE REAL PROPERTY DESCRIBED IN THE COMPLAINT,<br><br>Appellants. | No. 87680-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUNG, J. — David Arthur Morton took out a 15-year mortgage from Franklin Financial in 2000, but he has not made a payment since 2009. JPMorgan Chase Bank, N.A. (Chase) has owned and serviced Morton's loan since 2004. Although Chase no longer had the physical promissory note securing the mortgage on the property, in 2014, Chase sought foreclosure under RCW 62A.3-309, which allows a lender to enforce a note even if it no longer possesses the original. After a bench trial, the superior court concluded that Chase was entitled to foreclosure of the note and deed of trust on the property and entered judgment against Morton. Morton appeals, challenging the judgment on various bases. We affirm the decision below.

FACTS

The parties stipulated to the following facts for trial. On or about May 15th, 2000, David Arthur Morton executed and delivered a promissory note that named Franklin Financial as lender and secured a mortgage on a property located in Tacoma, Washington. At the time the note was executed, a deed of trust was also executed and recorded with Pierce County. Morton fell delinquent on his loan sometime in 2002. In February 2003, Morton executed a forbearance agreement with Bank One. Morton again fell delinquent on his loan sometime in 2005, and in September of that year, executed a forbearance agreement with Chase as successor by merger to Bank One. In July 2007, Morton entered into a payment extension agreement with Chase. Morton again missed payment in 2009 and admitted that he was in default of the terms of his loan obligation and was provided notice of delinquency.

In January 2013, Chase filed an "Affidavit of Lost Note," explaining that the hard copy of Morton's note was lost. Chase then filed a judicial foreclosure complaint in March 2014 and filed another affidavit in October 2014, again explaining that the note was lost. The superior court granted summary judgment in favor of Chase in November 2016, and Morton appealed. JP Morgan Chase Bank, N.A. v. Morton, No. 49846-4-II, slip op. at *1 (Wash. Ct. App. Mar. 27, 2018) (unpublished), https://www.courts.wa. gov/opinions/pdf/D2%2049846-4-II%20Unpublished%20Opinion.pdf. In March 2018, Division Two of this court reversed the superior court's summary judgment order and remanded for further proceedings. Id. at *2. Specifically, it reasoned that "Chase did not

present any evidence showing that Franklin had transferred the note to Bank One or that Chase had merged with Bank One." Id. at *3.

On remand, the foreclosure action went to trial. Morton submitted a motion for a jury trial, but on Chase's motion, the superior court struck the demand. Morton also filed a motion for the trial judge to recuse themself, which the trial court also denied. The court then held a five-day bench trial between December 2022 and March 2023. In its final order, the court issued the finding that "[i]ts more likely than not that the Note was delivered to Bank One who possessed it. It is more likely tha[n] not, that the Note was then transferred through corporate merger, to [Chase] who is the beneficiary of the promissory note made by [Morton]." In its conclusions of law, the court concluded that Chase "has legal standing and authority to enforce the Note" and was entitled to foreclosure of the promissory note and deed of trust on the property. Morton timely appeals.

## DISCUSSION

Morton challenges the court's determination that sufficient evidence supported its decision that Chase could enforce the note even if Chase lacked physical possession of it. Morton also contends that the trial court erred when it denied his request for a jury trial, particularly concerning his complaint of judicial bias and request for recusal. He also challenges a variety of evidentiary rulings as well as the trial court's denial of discovery sanctions.

I. <u>Challenges to the Findings and Conclusions</u>

Morton assigns error to the trial court "factually finding and legally concluding that the original paper Note . . . was transferred to Chase by way of an assignment dated February 2, 2001, from a Bank One employee." He also challenges several specific findings and conclusions relating to the assigned error.[1]

"We review the trial court's decision following a bench trial to determine whether the findings of fact are supported by substantial evidence and whether those findings support the conclusions of law." <u>224 Westlake, LLC v. Engstrom Props., LLC</u>, 169 Wn. App. 700, 720, 281 P.3d 693 (2012). "Substantial evidence is a quantum of evidence sufficient to persuade a rational fair-minded person that the premise is true." <u>Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Nw., Inc.</u>, 168 Wn. App. 56, 63-64, 277 P.3d 18 (2012). "If that standard is satisfied, we will not substitute our judgment for that of the trial court even though we might have resolved disputed facts differently." <u>Green v. Normandy Park</u>, 137 Wn. App. 665, 689, 151 P.3d 1038 (2007). We consider unchallenged findings of fact verities on appeal, and we review conclusions of law de novo. <u>Perry v. Costco Wholesale, Inc.</u>, 123 Wn. App. 783, 792, 98 P.3d 1264 (2004).

Chapter 62A.3 RCW, which incorporates article 3 of the Uniform Commercial Code (UCC), provides for the enforcement of negotiable instruments such as promissory notes. <u>See</u> RCW 62A.3-102, 3-104. Under RCW 62A.3-301, the parties

---

[1] However, RAP 10.3(a)(4) requires an appellant's brief to include "[a] separate concise statement of each error a party contends was made by the trial court," and here, Morton did not assign error to specific findings. Nevertheless, we address his claims to the extent the briefing identifies them sufficiently and the opposing party has had the opportunity to respond. <u>CalPortland Co. v. LevelOne Concrete LLC</u>, 180 Wn. App. 379, 392, 321 P.3d 1261 (2014) ("Where a party's brief makes perfectly clear what part of the decision below is being challenged…we will overlook the party's failure to specifically assign error to it, particularly when the text of the brief includes the disputed portion.").

entitled to enforce an instrument include (1) the "holder" of the instrument[2] or (2) a person not in possession who is entitled to enforce the instrument pursuant to RCW 62A.3-309.[3] Under RCW 62A.3-309(a), a person who has lost possession of an instrument is entitled to enforce the instrument if:

> (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

A person seeking to enforce an instrument must also prove the terms of the instrument and the right to enforce it. RCW 62A.3-309(b). Additionally, a trial court cannot enter judgment on a lost note unless it finds that the instrument's obligor is adequately protected against loss if another person asserts a claim to enforce the instrument. RCW 62A.3-309(b).

On appeal, the only finding of fact that Morton appears to challenge[4] is finding 11, which states,

> It is more likely than not that the Note was delivered to Bank One who possessed it. It is more likely than not, that the Note was then transferred through corporate merger, to Plaintiff who is the beneficiary of the promissory note made by the Borrower and Plaintiff has legal standing

---

[2] The UCC defines "holder" to include a "person in possession of a negotiable instrument that is payable . . . to bearer." RCW 62A.1-201(21)(A). When a holder makes a blank indorsement, i.e., an indorsement that does not specify the person to whom the instrument is payable, the instrument is payable to bearer. RCW 62A.3-205(b). Because Franklin indorsed Morton's note in blank, the person in possession of Morton's note would be the note's holder.

[3] A third category of persons entitled to enforce a note under RCW 62A.3-301, a non-holder in possession of the instrument who has the rights of a holder, is not at issue here.

[4] Morton does not apparently dispute the trial court's determinations on the other statutory requirements: "that the loss of possession was not the result of a transfer by [Chase] or a lawful seizure," Chase "cannot reasonably obtain possession of the instrument," and Morton is "adequately protected from any risk.

and authority to enforce the Note. Plaintiff is an Assignee of the Deed of Trust.

The parties stipulated facts, and copies of the note dated May 16, 2000, showed, that Franklin Financial was the original lender.[5] The parties also stipulated that at the time the note was executed, a deed of trust was also executed and it was recorded with the Pierce County auditor.[6] On February 28, 2001, Bank One received a "Corporation Assignment" of Morton's deed of trust from Franklin Financial, and the assigned deed of trust was again recorded with Pierce County.

Albert Smith, a corporate representative for Chase, confirmed that these types of assignments often happen "after the transfer of the note and the loan file." Smith further testified about Exhibit 9, a Bank One "correspondent flow and compliance checklist" that "appear[ed] to be the document that Bank One reviewed in determining the acquisition of the loan from Franklin Financial," and which covered the items "Bank One would review to determine if they wanted to acquire that loan."[7] Morton argues that "there

---

[5] Morton asserts the trial court erred because there were differences between Exhibit 3 and 22, which were allegedly copies of the note. But at trial, Smith explained that Exhibit 3 was a "certified copy of the note" that came from the title company, Rainier Title, and Exhibit 22 was a "copy of the original note" that Bank One acquired from Franklin Financial. Corporate representative for Chase, Albert Smith acknowledged that there appeared to be a "different endorsement from the same person," but stated that the note itself was the same. Indeed, Smith emphasized the copied notes indicated the original lender was Franklin Financial. Morton's signatures matched, and "the information within the note line[d] up." Accordingly, the trial court did not err when it relied on Exhibits 3 and 22 in making findings regarding the terms of the note and where the note originated.

[6] Morton also argues "that there is no evidence supporting Chase's factual and legal claims that the purported assignment received by Chase on June 21, 2000 actually transferred the loan from Franklin Financial to Bank One because Chase did not provide a copy of that assignment to Morton or the trial court." However, Chase did not need to provide the original copy of the assignment. Rather, it needed to provide a "quantum of evidence sufficient to persuade a rational fair-minded person that the premise is true." Newport Yacht, 168 Wn. App. 63-64. Here, the county record noting the assignment was enough to persuade the court that Franklin Financial transferred the deed of trust to Bank One.

[7] Later in his brief, Morton appears to argue that "RCW 5.45.020 [Business records as evidence] required Chase to lay an appropriate foundation for Exhibit 9 to be admitted into evidence." He cites to portions of the record below that indicated his objection to allowing the evidence in, and makes the

obviously was a reasonable factual and legal basis for not believing [Smith's] testimony that [the compliance checklist] established possession by Chase of the Note where that the face of the document demonstrated only that Chase possessed an electronic original." Indeed, the box for the "Borrower's signature—original ink" appears unchecked. But "[w]e do not substitute our judgment for that of a trial court on issues of weight and credibility." Brotherton v. Kralman Steel Structures, Inc., 165 Wn. App. 727, 736, 269 P.3d 307 (2011). Here, Smith confirmed that the checklist indicated the original note in blue ink was in the file.[8] Smith also testified that "the note is one of the most important documents of that collateral file," and if a note or deed of trust were missing, it would be listed in the "cure section" of the checklist as "an item that would need to be cured before the buyer would purchase that loan." Further, he testified that there was no indication that Bank One was searching for a lost note, as indicated by the absence in the cure list, and that, in his experience, a purchase of this type would not take place if it lacked any original documents necessary to enforce the loan. Smith identified that a cure letter seemed to be issued in relation to the file, but a "missing note" was not indicated as the cause of the cure letter. Instead, the checklist indicated

conclusory assertion that "the document was shown to be an unreliable business record because Chase claimed it had no other records relating to Exhibit 9 to substantiate the corporate witnesses' speculation about its meaning." But Morton does not provide legal authority or analysis as to why Exhibit 9 does not qualify as a business record or why any further testimony beyond Smith's was needed. Accordingly, we need not consider arguments that are unsupported by pertinent authority or meaningful analysis. RAP 10.3(a)(6)

[8] When asked if he had any way of knowing whether or not the original note the checklist referred to in the file is the "certified copy of the original notes attested to by the title of the insurance company," Smith responded: "[w]ell, with collateral files, you're looking specifically for the original note in blue ink. That's the one that you use to enforce the deed of trust. So that's what they would be looking for is that original blue ink note, not a certified copy."

that items listed in the cure area, "Assignment signed over to Bank One and the 30-day payment letter," had been received and that the funding for the loan was authorized.

Finally, the parties also stipulated that in February 2003, Morton executed a Forbearance Agreement with Bank One. This evidence, and reasonable inferences therefrom, provide substantial evidence supporting the trial court's finding that "[i]t is more likely than not that the Note was delivered to Bank One who possessed it."

Next, trial Exhibit 8 showed that in 2004, Chase acquired Bank One. Smith further testified that "Chase acquired the business records of Bank One . . . and the collateral file[9] that Bank One has or had bec[o]me a part of Chase's business records with that merger." The evidence also showed that Chase serviced Morton's loan from the time of the merger in 2004. The parties stipulated that in September 2005, "Morton executed a forbearance agreement with Chase as successor by merger to Bank One." In January 2013, Chase filed the first affidavit of lost note after discovering it could not locate the original note in its facilities. Smith testified that it was standard policy to place a lost note affidavit into the collateral file once someone realizes the note is lost.

This evidence, and reasonable inferences therefrom, provide substantial evidence supporting the trial court's finding that "[i]t is more likely than not, that the Note was then transferred through corporate merger, to Plaintiff who is the beneficiary of the promissory note made by the Borrower." In turn, the trial court's findings support its conclusion that Chase was the beneficiary of the note from Morton to Franklin Financial

---

[9] Smith testified at trial that a "collateral file" "houses the original document[s] [for a residential loan] such as the deed of trust, a mortgage, a note, title policies, [and] things like that."

8

and the assignee of the deed of trust, and, thus, had legal standing and authority to enforce the note pursuant to RCW 62A.3-309.

Morton also argues that Bank One's splitting of the deed and note into legal and beneficial interests violate RCW 62A.3-203(d)," the "various holdings" in Bain v. Metro. Mortg. Grp., Inc., 175 Wn.2d 83, 96-98, 285 P.3d 34 (2012), and the Restatement (Third) of Prop.: Mortgages § 5.4 (Am. Law Inst.1997). But he does not provide any argument or analysis explaining this assertion. "It is an appellant's responsibility to provide 'argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record.' " Romero v. Dep't of Soc. & Health Servs., 30 Wn. App. 2d 323, 338, 544 P.3d 1083 (2024) (quoting RAP 10.3(a)(6)). Ordinarily, "[p]assing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." Brownfield v. City of Yakima, 178 Wn. App. 850, 876, 316 P.3d 520 (2014). Accordingly, we decline to review the issue, and we conclude the trial court did not err by entering its findings of fact and conclusions of law.

## II. Request for Jury Trial

Morton contends that the superior court erred when it denied his request for a jury trial. We disagree.

Article I, section 21 of the Washington State Constitution guarantees the right to a jury trial in a civil action that is "purely legal in nature." Brown v. Safeway Stores, Inc., 94 Wn.2d 359, 365, 617 P.2d 704 (1980). "Conversely, where the action is purely equitable in nature, there is no right to a trial by jury." Id. Similarly, parties are not entitled to a jury trial if the action "presents a mixture of legal and equitable issues." Id.

9

at 365-66. We review a trial court's denial of a request for a jury trial for a "clear" abuse of discretion. Id. at 368.

Here, Chase sought judicial foreclosure and an in rem remedy and waived any right to a deficiency judgment. Washington courts recognize judicial foreclosure as an equitable action. Puget Sound Nat'l Bank v. Olsen, 174 Wash. 200, 202, 24 P.2d 613 (1933) (reasoning that foreclosure of liens raised an equitable question); see also Alpine Indus., Inc. v. Gohl, 30 Wn. App. 750, 760, 637 P.2d 998, 645 P.2d 737 (1981) ("Actions to foreclose mechanics' and materialmen's liens . . . are equitable proceedings.").; First Nat'l Bank v. Oppenheimer, 123 Wash. 290, 291, 294, 212 P. 164 (1923) (foreclosure of a "chattel mortgage" is "a suit in equity"). Morton provides no argument or legal authority that is contrary to this longstanding and controlling principle of law.[10] Under these circumstances, the trial court did not err in denying Morton's request for a jury trial.

### III. Judicial Conflict of Interest

Morton contends the trial judge erred by failing to address a potential conflict of interest because Washington judges' retirement accounts are "dependent upon the investment decisions of the Washington State Investment Board[,] which invests heavily in mortgage-backed securities." Thus, Morton argues, judges are disinclined from ruling against foreclosures, as the value of the mortgage-backed securities "can be influenced" by their decisions. Chase counters that even if assuming the conflict of

---

[10] Morton appears to contend the potential for a conflict of interest for all judicial officers, because their retirement accounts are "heavily invested in mortgage backed securities," requires a jury trial. We address this issue in the section below.

interest existed, the trial judge did not have a significant enough interest to require recusal. We agree with Chase.

"We review a trial court's recusal decision for an abuse of discretion." Tatham v. Rogers, 170 Wn. App. 76, 87, 283 P.3d 583 (2012). "The court abuses its discretion when its decision is manifestly unreasonable or is exercised on untenable grounds or for untenable reasons." Id.

"The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases." Id. at 90 (quoting Marshall v. Jerrico, Inc., 446 U.S. 238, 242, 100 S. Ct. 1610, 64 L. Ed. 2d 182 (1980)). However, as the Due Process Clause establishes a constitutional floor, questions about a judge's qualifications " 'are, in most cases, answered by common law, statute, or the professional standards of the bench and bar.' " Id. (quoting Bracy v. Gramley, 520 U.S. 899, 905, 117 S. Ct. 1793, 138 L. Ed. 2d 97 (1997)). Under the appearance of fairness doctrine, judges must both be impartial and appear to be so. Id. at 93. Ordinarily, a judge must recuse themselves if their impartiality could be reasonably questioned. West v. Washington Ass'n of County Officials, 162 Wn. App. 120, 136-37, 252 P.3d 406 (2011). Whether a judge's impartiality may reasonably be questioned is an objective test that assumes that a reasonable person knows and understands all the relevant facts. State v. Gentry, 183 Wn.2d 749, 762, 356 P.3d 714 (2015).

As an initial matter, a trial judge may properly hear a motion that accuses him or her of "violating the appearance of fairness doctrine," rather than transferring such

motion to another judge. <u>Tatham</u>, 170 Wn. App. at 88-89. Thus, the trial court did not abuse its discretion by failing to transfer Morton's motion to recuse to another judge.

On the merits, it also was not an abuse of discretion not to recuse based solely on the judge's "individual holdings within a mutual or common investment fund." First, while a judge typically should recuse if they have an economic interest in the subject matter in controversy or in a party to the proceeding, Code of Judicial Conduct (CJC) 2.11(A)(3), this requirement does not apply to de minimis interests. <u>Kok v. Tacoma Sch. Dist. No. 10</u>, 179 Wn. App. 10, 26, n.8, 317 P.3d 481 (2013). De minimis interests include "an interest in the individual holdings within a mutual or common investment fund." CJC 2.11 cmt. 6. Thus, at most, Morton alleges a de minimis interest that does not require recusal. <u>See</u> CJC 2.11 cmt. 6. And he does so without alleging facts that indicate that the trial court judge has control over the state retirement plans. Without such facts, there is nothing to support his argument. <u>See</u> <u>Larson v. Snohomish County</u>, 20 Wn. App. 2d 243, 288, 499 P.3d 957 (2021) (rejecting as "pure speculation" a similar claim that judges had a personal interest in retirement funds invested in mortgage-backed securities and therefore had an interest in allowing lenders to foreclose).

Moreover, under the " 'well-settled principle at common law,' " the rule of necessity, a judge may decide a case despite having a personal interest in the outcome if the case cannot be heard otherwise. <u>Id.</u> at 287 (quoting <u>United States v. Will</u>, 449 U.S. 200, 213, 101 S. Ct. 471, 66 L. Ed. 2d 392 (1980)). The rule of necessity " 'provides for the effective administration of justice while preventing litigants from using the rules of recusal to destroy what may be the only tribunal with power to hear a dispute.' " <u>Larson</u>,

20 Wn. App. 2d at 287-88 (quoting <u>Glick v. Edwards</u>, 803 F.3d 505, 509 (9th Cir. 2015)). If Morton's argument were to prevail, every judge in Washington would be disqualified from ruling in his case. The trial judge's decision not to recuse was not a manifest abuse of discretion.

IV. <u>Denial of Motion for Discovery Sanctions</u>

Finally, Morton argues that the trial court erred when it denied his motion for discovery sanctions, as he contended that Chase's corporate witness was underprepared for his depositions. At trial, the court denied the motion because the parties failed to engage in a Rule 26(i) conference. We review a trial court's decision as to whether to impose discovery sanctions for abuse of discretion. <u>Magana v. Hyundai Motor Am.</u>, 167 Wn.2d 570, 582, 220 P.3d 191 (2009).

CR 30(b)(6) allows for the deposition of a "corporation" through "one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf." CR 26(i) specifies that a "court will not entertain any motion or objection with respect to rules 26 through 37 unless counsel have conferred with respect to the motion or objection."

At the hearing on the motion for sanctions, the trial court inquired if Morton conducted a CR 26(i) conference on the issues he raised. Morton stated that he thought they did, but couldn't recall. Because the parties did not confer, as was required under CR 26(i) before Morton sought his motion for sanctions, the trial court did not abuse its discretion when it denied the motion on that ground.

## CONCLUSION

We affirm the trial court's judgment.

_____
Chung, J.

WE CONCUR:

_____                     _____
                                            Mann, J.